## Panopoulos, Appellant, *v.* Metropolitan Life Insurance Co.

416

Argued April 17, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Stewart P. McConnel,* for appellant.—Mere proof of a false representation as to a matter material to the risk does not preclude recovery on the policy: Suranitz v. Prudential, 244 Pa. 582; Skruch v. Metropolitan, 284 Pa. 299.

*D. C. Jennings,* and with him *Dan H. Stone,* for appellee.—Upon undisputed testimony of the falsity of answers to questions in an application for life insurance denying previous disease, surgical operation and

attendance of physicians, the court was justified in holding these matters material to the risk and directing a verdict for defendant: Shannon v. Knights of the Macabees, 54 Pa. Superior Ct. 634; Hartig v. American Ice Co., 290 Pa. 21; Timlin v. American Patriots, 249 Pa. 465.

OPINION BY GAWTHROP, J., July 2, 1929:

Plaintiff, as beneficiary, sued to recover the amount of an insurance policy issued by defendant company on the life of his wife, Helen Panopoulos, on August 23, 1926, pursuant to her written application made August 21, 1926. The insured died March 18, 1927. The policy offered in evidence contains the following provision: "4. Entire contract: This policy and the application therefor constitute the entire contract between the parties, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder, unless it be contained in the application therefor and a copy of such application is attached to this policy when issued." The application, a copy of which was attached to the policy offered in evidence, was signed by the insured in the presence of Perry C. Smith, M. D. It provided: "It is understood and agreed: 1. That the foregoing statements and answers are correct and wholly true and together with the answers to questions on part (b) hereof, they shall form the basis of the contract of insurance, if one be issued." By this the applicant's statements to the medical examiner are made a part of the application and of the contract of insurance and were admissible as evidence of the representations made to the company as the basis of its entering into the contract. The application contains the following questions and answers: "5. Have you ever been an inmate of, or

have you ever (been) received at an asylum, hospital, sanatorium, or cure? No." "11. Have you ever suffered from any ailment or disease of ...... (c) The stomach, or intestines, liver, kidneys, or genito-urinary organs? No." "12. (f) Have you ever had any surgical operation? Yes. Emettoza, one, 1922, 10 days, moderately severe, Presbyterian Hospital, Pittsburgh, Pa." "(g) Have you consulted a physician for any ailment or disease not included in your above answers? No." "13. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years, and for what illness or ailment? Dr. Forcey, Ambridge, Pa., January, 1926, for parturition. Result normal."

The defense pleaded was that there was no liability under the policy, because the answers made by the insured to the questions above quoted were false and fraudulent as to matters material to the risk assumed by the company thereunder.

At the trial the evidence produced by defendant to establish the falsity of the answers made by the insured to the questions above stated is substantially this: Dr. C. B. Forcey testified that he first attended the insured in September, 1924, for fibroid tumors of the uterus; that he had her removed to the Sewickley Valley Hospital and assisted Dr. Harold Miller in performing an operation upon her for the removal of the tumors and the uterus, a serious operation which would render it impossible for her to bear children afterward; that she was under his care from that time until about a month prior to her death; that he attended her during the spring or early summer of 1926, when she was suffering from cancer of the abdominal contents; that in his opinion she was inoperable at that time; that he advised her to go back to Dr. Miller for further examination by him; and that he did not attend her for parturition, or child birth, in January,

1926, or at any other time after the operation of September 20, 1924. Dr. Miller testified that he performed the operation described by Dr. Forcey; that subsequently, on August 7, 1926, the insured came to him for an examination; that he then found that she was suffering with abdominal carcinoma, or cancer, and advised against an operation; and that at the request of Dr. Decker he saw her two or three days before her death, when she was suffering from abdominal cancer. Dr. Decker, called in rebuttal by plaintiff, testified that he "made an exploratory operation" four or five days before she died, but was unable to diagnose her condition accurately, although his impression was that she was suffering from malignant tumors of some sort. Defendant also called as a witness the superintendent of the Sewickley Valley Hospital, who produced the record of that institution showing the admission of Helen Panopoulos to it on September 19, 1924, at 10:20 P. M., her discharge therefrom, October 15, 1924, at 12:30 P. M., and the fact of the operation, on September 20, 1924, described by Drs. Forcey and Miller.

Plaintiff made no attempt to contradict this evidence. Indeed, he and his counsel seem to have conceded the fact of the operation of September, 1924. For, when he was on the stand, his counsel asked him the following question: "Q. George, your wife had an operation in 1924—from knowing your wife as you did, would you say she had recovered from that operation?" He met the defense offered by the company by testimony of himself and his witnesses that at the time the policy was issued his wife did not understand the English language and could not read it, and that she appeared to be in good health. Dr. Decker testified that in March, 1927, she was brought to the Presbyterian Hospital, and that he made an effort several times to talk with her, but was unable to do so and "had to talk through an interpreter to have an under-

standing with her." One witness testified that she understood English "very little." Another said, "not very much;" another said "not too much, she could understand one hundredth;" another testified that she could not understand or read it; and another said that she spoke English "very poor and could not read it." Defendant's witness, Dr. Forcey, testified, on cross-examination, that "she spoke very poorly ...... I was very much of the opinion that she did not understand all that I was trying to convey to her and on many occasions I insisted on both her and her husband bringing an interpreter in so that I could understand and be understood." Plaintiff testified also, through an interpreter, that he went with his wife when she went to the office of Dr. Smith, who examined her for the policy, but that "when the examination was made he wasn't along, he waited outside in the waiting room."

The trial judge gave binding instructions for defendant on the ground that the undisputed evidence was that certain representations made by the insured in her application for insurance were not true and that they related to matters material to the risk. This appeal is from the judgment entered on that verdict.

Counsel for plaintiff does not deny that the answers made by the insured to some of the questions in the application, notably whether the insured had ever been an inmate of a hospital or had ever suffered any ailment or disease of the genito-urinary organs, related to matters material to the risk. His contention is that as the contract in suit provides that the answers in the application "shall, in the absence of fraud, be deemed representations and not warranties," the case is within the rule stated in Suravitz v. Prudential Ins. Co., 244 Pa. 582, and that the question of the good faith of the insured in making the answers to questions material to the risk was for the jury.

As stated by Judge KELLER, speaking for this court, in Soroko v. Woodmen of the World, 76 Pa. Superior Ct. 328, 332; "It has long been the law of this State that evidence is admissible to prove that an applicant for insurance made truthful answers to the questions contained in the application, and that the agent of the company erroneously reduced them to writing ...... and this applies to answers which are warranties no less than mere representations: Kister v. Lebanon Mutual Life Ins. Co., 128 Pa. 553; Dowling v. Merchants' Ins. Co., 168 Pa. 234; Fidelity T. & T. Co. v. Metropolitan Life Ins. Co., 64 Pa. Superior Ct. 361; and especially so where, as here, the applicant is illiterate, cannot read or write, and must rely on the good faith and accuracy of the agent: Carrozza v. National Life Ins. Co., 62 Pa. Superior Ct. 153; but the evidence to be submitted to the jury must be clear and satisfactory: Suravitz v. Prudential Ins. Co., 261 Pa. 390." The testimony necessary to prove these facts need not be of the same quantity as that required to reform a written instrument. It should consist of what was said and done at the time the application was made: KEPHART, J., in Fidelity T. & T. Co. v. Metropolitan Life Ins. Co., supra. "The question thus presented is not whether the terms of a written contract may be varied by oral testimony, but whether an omitted statement may be supplied when the paper from which it was supplied was prepared by the other party to the contract and signed by the person to be affected without reading the paper or having heard it read. Such conduct may show great confidence in the person with whom one is dealing, or want of care on his own part in informing himself of the exact character of the paper signed, but as against the party by whom the fraud or mistake was committed, it does not estop the too careless or too trustful party from

alleging the truth'': Meyers v. Lebanon Mutual Ins. Co., 156 Pa. 420.

In the first appeal of the Suravitz case (244 Pa. 582) it is stated: ''In our opinion the change in the covenant from a warranty to a representation was intended to broaden the scope of inquiry in such cases so as to give relief to parties who in good faith take out policies of insurance, from the harshness, and in many instances, the injustice of the old rule applicable to warranties. If this be the correct view, and it is certainly the just and equitable one, we can see no reason for limiting the inquiry to the single question of the materiality of the answer. Whether true answers were made, and whether the answers as made were correctly written down by the agent of the insurance company, and the good faith of the party making the answers to the best of his knowledge and belief, are questions which go to the very essence of the insurance risk, and parties should not be denied the right to have such matters determined before a proper tribunal, unless they have covenanted otherwise. As to warranties, the general rule is that the insured is concluded by his answer as it appears in the application attached to the policy, but as to representations, no Pennsylvania case has gone so far as to hold that the same drastic rule should be applied, and no case has decided that the inquiry is limited to the single instance where the materiality of the answer is raised by the issue.'' This decision is followed without qualification in Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299, and earlier cases therein cited.

In the Suravitz case it appeared that the insured was a Hungarian with a very imperfect knowledge of the English language and that at the time of making her answers she made them through an interpreter. There was no evidence that she either did or could read the policy or the application. Her husband and

daughter were present when the answers were made and testified that the answers written in the application were not the answers made to the agent who wrote them down. This testimony was corroborated by the report of the medical examiner and this report was in the hands of the insurance company, which was affected with notice of what it contained. Referring to these facts, the Supreme Court said: "In such a case a greater burden rests upon the insurer to deal fairly with the insured. This is especially true as to the acts of the agent in soliciting the insurance and writing down the answers."

In Feinberg v. New York Life Ins. Co., 256 Pa. 61, it appeared that the application was signed in blank in the presence of defendant's agent who took pencil memoranda of answers to the questions and on the following day filled out the signed blank at his office, and that the medical examiner's report, containing a list of questions relating to the occupation, habits and health of the insured, was made out by defendant's examiner, who inserted the answers made by applicant to the various questions. The report was signed in Hebrew by applicant in the presence of the examiner. The applicant could not read or write the English language. The application and medical examiner's report was not made a part of the policy so as to afford an opportunity to the insured to have it read to him at his leisure. It did not appear that the answers so written in were read to the applicant. The issues submitted to the jury were whether the answers to questions in the application were in fact made by the insured as written by the representatives of defendant company, and whether they were knowingly false and fraudulent. In sustaining the judgment entered on the verdict for the plaintiff, it was held that under the circumstances the questions whether the answers of the applicant were responsive to questions

he fully understood, and whether they were correctly transcribed by defendant's representative, were questions for the jury, and that the case was within the rule stated in the Suravitz case.

Under the doctrine of the Suravitz case the scope of inquiry is so broadened as to permit a jury to pass upon the question of the good faith of the party making the answers, whenever the evidence raises an issue as to it. But this doctrine does not change the rules of evidence or practice in determining the effect of certain attempted proof, and whether or not there is evidence raising issues of fact to be submitted to the jury. When defendant had proved by uncontradicted and indubitable evidence that the recorded answers of the applicant to certain material questions in the application were not in accordance with the facts, it made out a prima facie defense, which, unreplied to, would have entitled it to a verdict. Plaintiff did not undertake to answer this defense by evidence that defendant's agent mistakenly, fraudulently or incorrectly filled in the answers to the questions in the application. He merely presented evidence to the effect that the insured was somewhat illiterate, could not read the English language and understood and spoke it very poorly. There is no evidence in the case as to the manner of asking or answering the questions in the application, which was signed by the deceased. In the words of the court below, "so far as the evidence discloses an interpreter may have been present and everything may have been made entirely clear to the applicant. There is nothing in the evidence inconsistent with the statement in the report itself, over the signature of the applicant, that she had read the answers before signing, and that they were correctly written as given by her, except to the effect that she probably could not have read the answers herself, but that they must have been read and explained to her.

Dr. Smith, who conducted the medical examination, was in court during the trial, but was not called by plaintiff to show how the medical examination was conducted or the written report made up.'' In our opinion the mere proof of the inability of the deceased to read or understand the English language, would not have warranted a finding by the jury that she did not understand the questions which she answered and that, therefore, her answers were not false, but at most honest mistakes made in good faith. While it cannot be doubted that the good faith of her answers would depend upon her understanding of the questions asked, it is obvious that she might have had a full, true and complete understanding of the questions, although she could not read or understand a word of the English language. In these circumstances we are constrained to agree with the court below that the proof of the inability of the deceased to read or understand the English language did not in itself raise an issue upon the question whether the answers were made in good faith. The result of a conclusion to the contrary would seem to be that in every case in which the statements made by the insured are declared to be representations and not warranties proof that the applicant could not understand or speak English would take the case to the jury. None of the cases following the doctrine of the Suravitz case have gone to that length, and we think it would be dangerous doctrine. We agree with the court below that under all the evidence he was justified, under familiar cases, in declaring as a matter of law that the applicant had made false statements to the medical examiner of defendant in respect to matters essentially material to the risk in issuing the policy, and that for this reason there could be no recovery. His well considered and exhaustive opinion fully justifies his conclusion.

The judgment is affirmed.