664 A.2d 1020

**Helen TWILLA, Appellant,**

v.

**Carl TWILLA.**

Superior Court of Pennsylvania.

Submitted March 27, 1995.

Filed Sept. 5, 1995.

88

Helen Twilla, pro se, appellant.

John Gagliotti, Public Defender, Meadville, for appellee.

Before McEWEN, BECK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a final decree of divorce and distribution of the parties' marital property. We affirm in part and vacate in part.

The parties were married on July 23, 1987 and separated on May 15, 1990. Appellant (wife) filed a complaint in divorce on May 21, 1990. A master's hearing was held on January 9, 1991, and on February 19, 1991, the master filed his report. Both parties filed exceptions to the master's report. On September 20, 1993, appellant filed a praecipe to place her exceptions on the lower court's argument list. The trial court ordered an evidentiary hearing on matters which had occurred after the master's hearing. The trial court conducted this hearing on February 3, 1994, March 30, 1994, and April 27,

1994. The trial court filed a final decree of divorce and equitable distribution of property on September 2, 1994. Appellant then filed this timely appeal.

In its final decree, the lower court determined, *inter alia*, that appellant was entitled to receive alimony from appellee in the amount of $200.00 per month for sixty months. The lower court found that appellee's pension benefits were not marital property subject to equitable distribution, and that appellee had caused the parties to lose the equity in their marital residence by failing to keep up with the mortgage payments, causing the home to be sold at a foreclosure sale. The lower court also directed the parties to transfer the title to their 1986 Chevrolet Nova to a wrecking company which currently is in possession of the automobile, and to split the proceeds of the sale of the automobile to this company equally. Appellant raises the following issues on appeal:

1. Did the lower court err in awarding a payment termed "periodic alimony" when the intent of the court was to equitably distribute the marital property, and the court had knowledge which would make alimony inappropriate?

2. Did the lower court err in not providing for equitable distribution of property with regard to appellee's (husband's) possession and use of the marital residence and the jointly owned automobile when the court had knowledge that husband wasted this marital property?

3. Did the lower court err in disregarding the master's recommendation for division of husband's civil service retirement benefit and instead made its own calculation based on information provided after the master's hearing?

Before addressing these issues, we first set forth our standard of review.

■ The trial court has broad discretion in fashioning an award of equitable distribution which will be overturned only for abuse of that discretion. *Oaks v. Cooper*, 536 Pa. 134, 638 A.2d 208 (1994); *Gordon v. Gordon*, 436 Pa.Super. 126, 647 A.2d 530 (1994). "In assessing the propriety of a marital property distribution scheme, our standard of review is wheth-

er the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion." *Perlberger v. Perlberger,* 426 Pa.Super. 245, 265, 626 A.2d 1186, 1197 (1993), *appeal denied,* 536 Pa. 628, 637 A.2d 289 (1993).

"Our standard of review of an Order granting or denying alimony is abuse of discretion by the trial court, which will be found where the trial court fails to follow proper legal procedure or misapplies the law." *Baker v. Baker,* 425 Pa.Super. 237, 239, 624 A.2d 655, 656 (1993). "The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Nemoto v. Nemoto,* 423 Pa.Super. 269, 275, 620 A.2d 1216, 1219 (1993). "Alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Id.* at 275–76, 620 A.2d at 1219. "Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." *Perlberger v. Perlberger,* 426 Pa.Super. at 277–78, 626 A.2d at 1203. "Necessity is the only requirement in determining the propriety of an alimony award and that necessity is judged by numerous considerations only some of which have to do with the rehabilitation of the recipient spouse." *Zullo v. Zullo,* 395 Pa.Super. 113, 122 n. 3, 576 A.2d 1070, 1074 n. 3 (1990), *affirmed,* 531 Pa. 377, 613 A.2d 544 (1992). In determining the necessity of an award of alimony, the court is to consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in the determinations relative to alimony.

(15) The Federal, State, and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b).

 In the instant case, the trial court awarded appellant $200.00 per month alimony for sixty months. Appellant contends that the award of alimony to her was improper because she is presently cohabiting with a member of the opposite sex and has been since December, 1993. Appellant also testified that she had signed a motion to withdraw her claim for alimony because of this circumstance, although the motion was not filed. Appellant contends that the trial court's alimony

award to her should have been designated as equitable distribution.

Section 3706 of the Divorce Code provides as follows:

No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has entered into cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity.

23 Pa.C.S.A. § 3706. Under this statute, the trial court abused its discretion in awarding alimony to appellant. Appellant's assertion that she is cohabiting with a member of the opposite sex defeats her entitlement to alimony under the statute, and we are unaware of any authority which would permit alimony to be awarded in such a situation.

Appellant contends that the amount the lower court awarded as alimony should have been designated as installment payments of equitable distribution. Appellant refers to *Wagoner v. Wagoner*, 538 Pa. 265, 648 A.2d 299 (1994) on this point. In *Wagoner*, the trial court directed that husband pay wife $1000 per month for six years. *Id.* at 267, 648 A.2d at 300. At the time the payments were ordered, the husband was earning $5000 per month and wife $700 per month. *Id.* Nine months later, the husband's employment was terminated and he was unable to obtain similar employment. *Id.* Husband requested modification of the "alimony" award. The Pennsylvania Supreme Court determined that payments designated as "alimony" should not be considered as such because the lower court in that case specifically awarded such payments "in lieu of granting appellee her share of appellant's pension, and [were] fashioned to pay out over time appellee's interest in an asset which would otherwise remain undistributed until appellant's retirement, some years later than appellee." *Id.* at 270, 648 A.2d at 302. The court reasoned that the payments "were calculated to approximate the share of the pension which appellee would receive but in a form which would allow her, prior to distribution of the actual pension, to

establish a retirement fund for herself." *Id.* at 270, 648 A.2d at 302.

The concept of "equitable reimbursement" to a spouse where the marital assets were insufficient to compensate the spouse for her contribution to the marriage was recognized by the Pennsylvania Supreme Court in *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992) and *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990). In *Bold,* the lower court awarded wife monthly installments of $550.00 for sixty months, or $33,-000.00. *Id.* at 490, 574 A.2d at 553. The trial court found that during the first five years of the parties' marriage, while the husband was in school, the wife had contributed $34,000.00 more than he did to the marriage. *Id.* at 495, 574 A.2d at 556. The *Bold* court found that "[b]ecause there was insufficient marital property to compensate Mrs. Bold for her financial contributions to the marriage in excess of those made by Mr. Bold, the master and the trial court awarded Mrs. Bold a cash amount which the master called 'reimbursement alimony' and which the trial court called 'equitable reimbursement.'" *Id.* The Pennsylvania Supreme Court upheld the award on the basis that the supporting spouse in a case such as *Bold* "should be awarded equitable reimbursement to the extent that his or her contribution to the education, training or increased earning capacity of the other spouse exceeds the bare minimum legally obligated support. . . ." *Id.* at 496, 574 A.2d at 556. The court further held that the award of "equitable reimbursement" was correct because the property available for distribution did not equal "the amount of Mrs. Bold's equitable distribution plus the amount of her equitable reimbursement." *Id.* The court concluded that the amount of property to be distributed and the amount of cash payments for equitable reimbursement was "a matter for the sound discretion of the trial court," and the court found no abuse of discretion by the lower court. *Id.* at 497, 574 A.2d at 556–57.

In *Zullo,* the lower court awarded the wife $300.00 per month "alimony" payments for forty-eight months ($14,400.00) to repay wife for husband's portion of a marital debt which wife herself had paid. *Zullo v. Zullo, supra,* 531 Pa. at 379,

613 A.2d at 545. Husband sought to terminate these payments upon wife's remarriage. *Id.* The Pennsylvania Supreme Court, relying on *Bold,* held that "wife was not receiving alimony in the traditional sense, but rather as a way to compensate her for the lack of property needed to satisfy joint obligations." *Id.* at 382, 613 A.2d at 546. The Supreme Court concluded that the trial court had abused its discretion in granting husband's petition to terminate the wife's monthly payments. *Id.*

The court in *Wagoner* relied on *Zullo* and *Bold* for the "fairness" principle expressed in those cases. *Id.* The *Wagoner* court concluded that husband should not continue to be required to pay an obligation he was unable to pay, but that the lower court should consider certain stock holdings which had not yet been equitably distributed as a source of achieving the equity the lower court had sought to achieve by use of the "alimony" payments. *Id.* at 272–73, 648 A.2d at 303.

In the instant case, the lower court determined that it would award appellant "alimony" at the rate of $200.00 per month for five years. The trial court listed the following reasons for its decision:

1. [Appellant] meets some of the alimony criteria (23 Pa. C.S.A. 3701 et seq.)

2. We cannot make a proper equitable distribution of marital property award because there is not enough marital property to distribute.

3. [Appellant] received very little of the marital property, largely because of the husband's conduct in causing the equity in the residential real estate to be lost.

4. Alimony escapes the automatic discharge in a bankruptcy proceeding if the husband declares bankruptcy.

Trial Court Opinion, September 1, 1994, at 25. The trial court noted that husband's failure to make the mortgage payments on the marital residence had resulted in appellant's loss of equity in the house, in the amount of $11,739.00. The court also noted that "[i]f there was sufficient marital property to distribute we could make a distribution that would cover her

loss." *Id.* at 26. There was, however, according to the lower court, nothing to equitably divide. *Id.* The lower court then determined that the wife qualified for alimony, and awarded her payments totalling $12,000.00.

As we have already determined, the lower court's award of alimony was error because appellant is cohabiting with a member of the opposite sex, which precludes such an award. However, it is evident from the lower court's opinion that the court was seeking, by its award of alimony, to reimburse appellant for the lost equity in the marital home, which could not otherwise be fully compensated because of the lack of available marital assets. The cases previously discussed, *Zullo, Bold,* and *Wagoner,* all permitted the use of payments designated as "alimony" for satisfying the demands of equitable distribution. In this case, where the alimony award was improper, but there was insufficient marital property to fashion an equitable distribution award, it would have been appropriate for the lower court to have considered an installment payment arrangement to compensate appellant for her lost equity, similar to those found permissible in the above line of cases.

Accordingly, we will vacate the award of alimony and will remand the case to the lower court for entry of an order which will achieve the goal of compensation to appellant for her lost equity in the marital residence.

Next, appellant contends that the trial court erred in not awarding her equitable distribution of one-half of the equity in the marital residence ($11,737.00). We have discussed this issue in connection with the alimony issue raised on appeal. Therefore, it is not necessary to address it again.

█ Appellant contends that the trial court erred in determining that appellee's pension benefits were not available for equitable distribution. The trial court found that appellee is covered by the Civil Service Retirement System (CSRS) for federal employees and is not covered by Social Security. Appellant, on the other hand, is covered only by the Social Security system. Relying on *Cornbleth v. Cornbleth,* 397

Pa.Super. 421, 580 A.2d 369 (1990), *appeal denied,* 526 Pa. 648, 585 A.2d 468 (1991), the trial court determined that it was necessary to offset the amount of Social Security benefits which appellee would have received if he had participated in that system from the present value of his CSRS pension because Social Security benefits are exempt from equitable distribution. In *Cornbleth,* the court considered a case in which the husband, like appellee, participated in CSRS but the wife did not. The court found:

> One of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible, thus, eliminating a bias in favor of, or against, a class of individuals. To the extent individuals with Social Security benefits enjoy an exemption of that "asset" from equitable distribution we believe those individuals participating in the CSRS must, likewise, be so positioned. Consider for example an individual being divorced at approximately age fifty. Assuming a normal work history, that person will likely have accrued a substantial pension as well as a right to Social Security. When the pension is divided in equitable distribution there will be a diminution of the expected retirement income. However, the presence of Social Security will help offset the diminution.

*Cornbleth,* 397 Pa.Super. at 425, 580 A.2d at 371. The court found that a participant in CSRS is at a disadvantage "when compared to the majority of the work force" because a substantial amount of income which would be used to fund a future Social Security benefit (which would be exempt from equitable distribution), "is not similarly shielded for the CSRS participant." *Id.* at 426, 580 A.2d at 372. The *Cornbleth* court further determined that in order to "facilitate a process of equating CSRS participants and Social Security participants,"

> we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion

of the pension could be derived and included in the marital estate for distribution purposes.

*Id.* at 427, 580 A.2d at 372.

The lower court in this case noted that the master did not perform the calculation required by *Cornbleth.* Trial court opinion at 7. The court noted that appellee had filed a brief related to his exceptions to the master's findings, in which he included calculations relative to a *Cornbleth* computation. The court noted that this information was not part of the record before the master, but decided to consider it rather than remand the proceedings to the master for additional hearing. *Id.* at 8. The court then made calculations and determined that appellee's CSRS pension benefit as of the date of separation was less than the portion of his pension which is equal to a Social Security benefit. *Id.* at 8–9. The court concluded that since the value of the CSRS pension benefit is less than the converted amount of Social Security benefits, none of the CSRS benefit may be considered marital property for equitable distribution. *Id.* at 9–11. Therefore, no funds for equitable distribution were available from pension benefits under the trial court's decision.

Appellant contends that the trial court's decision on appellee's pension benefits was erroneous because the master considered the wife's social security benefits in his determination, and therefore, *Cornbleth* should not be applied because the master treated the parties equally. Appellant cites *Elhajj v. Elhajj,* 413 Pa.Super. 578, 605 A.2d 1268 (1992) in this regard. In *Elhajj,* both husband and wife participated in CSRS; neither paid social security taxes. In that case, the court held that the *Cornbleth* computation was not necessary because the goal of the *Cornbleth* court "was to equate the pensions of the husband and wife by excising the equivalent value of Social Security benefits from the husband's pension and rendering that portion of the pension non-marital property." 413 Pa.Super. at 583, 605 A.2d at 1271. The court concluded that since neither husband or wife in *Elhajj* was entitled to social security benefits, the trial court did not abuse its discretion in not applying *Cornbleth.* The instant case is different from

*Elhajj* in that only husband and not wife, participated in the CSRS system. Therefore, the lower court was correct in applying *Cornbleth* to the instant case.

Appellant also contends that the lower court erred in applying *Cornbleth* because the "evidence" which the lower court used for its calculations was provided after the master's hearing. Appellant asserts that the lower court should not have considered this evidence. Appellant cites *Pavie v. Pavie*, 414 Pa.Super. 294, 606 A.2d 1207 (1992) in support of this position. In *Pavie*, a master heard the parties' equitable distribution claims and entered a report and recommendation. Within ten days of the master's report, wife filed exceptions. *Id.* at 296, 606 A.2d at 1208. The trial court held a "hearing on the Exceptions to Equitable Distribution." *Id.* Although the court called the hearing "de novo," the court only heard argument on the exceptions. *Id.* No witnesses were sworn and no testimony was taken. *Id.* On appeal, the Superior Court held that where claims are referred to a master, Pa. R.C.P., Rule 1920.55, 42 Pa.C.S.A., governs the proceedings. *Id.* at 299, 606 A.2d at 1209. If this procedure is followed, "[a] de novo hearing is not to be held before the trial court, rather the court is to hear arguments on those matters raised in the exceptions." *Id.* at 301, 606 A.2d at 1210.

In the instant case, the lower court decided to hold a hearing on the exceptions because of the length of time between the master's hearing and the date appellant listed her exceptions for argument. The master's hearing occurred January 9, 1991 and appellant filed a praecipe for argument on her exceptions on September 20, 1993. The trial court, in deciding to conduct an evidentiary hearing, determined that changes in the parties' circumstances had occurred since the master's hearing. The trial court specifically indicated that the hearing was to focus solely on matters which had occurred since the master's hearing.

We find no error in the lower court's decision. A significant amount of time had elapsed since the master's hearing; thus it was necessary to take additional testimony in order to proper-

ly rule on the parties' exceptions. In addition, the master improperly considered the wife's social security benefits in determining the equitable distribution of appellee's pension. Thus, it was proper for the trial court to reconsider the master's reasoning as to the pension benefit.

Appellant contends that she is entitled to one-half of the rental value of the marital residence during the time that appellee lived in the marital residence without making mortgage payments. She also asserts that she is entitled to reimbursement of the cost of renting a garage for the Chevy Nova from the time appellee abandoned it until it was taken to a junk yard. Neither of these issues was raised in appellant's exceptions to the master's report. Thus, appellant has waived them. Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. (issues not raised in the trial court may not be raised for the first time on appeal). The trial court considered appellant's allegations as to the marital residence but found that appellant had failed to provide sufficient evidence of the fair market value of the residence. For this reason also, the contention is waived.

Appellant also argues in connection with the Chevy Nova that she should be entitled to one-half of the market value of the automobile established by the master. A review of the master's report indicates that the master valued the car at $2100.00. The lower court indicated that the automobile should be valued at an amount to be determined by the junk yard where the automobile is located. We do not find that the lower court abused its discretion in determining, three years after the master's hearing, that the car should be given the value assigned by the junk yard. However, in light of the trial court's findings that appellant lost more than $11,000 in equity due to appellee's wasting of the marital residence as an asset, and our finding that the lower court's award of alimony to appellant was an abuse of discretion, the lower court's award of only one-half the value of the car to appellant is also an abuse of discretion. Because of the lost equity in the house and the unavailability of sufficient marital assets to compen-

sate appellant for this loss, the lower court should have awarded her the entire value of the automobile.

Accordingly, we will vacate the lower court's order awarding appellant alimony. We will also vacate the award of one-half the value of the 1986 Chevy Nova and order that appellant is entitled to the entire amount of the value of this asset. The lower court's order is affirmed in all other respects. The case is remanded to the lower court for entry of an order which will compensate appellant for her lost equity in the marital residence, as previously discussed in this memorandum.

Order affirmed in part and vacated in part. Case remanded to lower court for further proceedings in accordance with this memorandum.

BECK, J., files a dissenting statement.

BECK, Judge, dissenting:

I join in that portion of the majority opinion which affirms the trial court's treatment of the husband-appellee's pension.

I agree with the majority that the trial court's characterization of payments to the wife as alimony is incorrect. In light of the facts of this case and the trial court's stated reasons for entry of the award, the trial court's order should more properly have been designated equitable reimbursement rather than alimony. *See Wagoner v. Wagoner,* 538 Pa. 265, 648 A.2d 299 (1994); *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992); *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990). Unlike the majority, however, I would not remand, but would affirm the payments to the wife and designate them as equitable reimbursement.

The majority's holding that the payments to the wife are not alimony makes the majority's discussion of wife's lack of entitlement to alimony unnecessary and dicta. I therefore do not join in that portion of the majority opinion.

Further, I would affirm the portion of the trial court's order awarding appellant one-half of the value to be assigned by the junkyard to the parties' automobile. Appellant's argument goes to the valuation of the automobile, not to the apportion-

ment of its value. The trial court found that both parties had acted unreasonably in connection with the disposition of this asset, and thus that both parties had contributed to its ultimate waste. This finding is supported by the record, and I thus cannot conclude that the trial court abused its discretion by using the reduced junk value of the automobile rather than the market value assigned by the master, or in dividing that value equally between the parties. Moreover, appellant did not request an award of the entire value of the automobile in compensation for other assets wasted by appellee. In the absence of either an abuse of discretion in the findings of fact upon which the trial court's order was based or an argument by appellant that the order was improper in light of the overall property distribution scheme, I can see no basis for disturbing the trial court's order.

Accordingly, I would direct the trial court to redesignate its alimony order as an order for equitable reimbursement. In all other respects, I would affirm the order of the trial court.