**Felton v. Felton**

*Mark S. Weaver,* for plaintiff.
*H. Denning Mason,* for defendant.

BROWN JR., *P.J.,* January 24, 2008—Before the court are claims for equitable distribution of the parties' marital assets, alimony, counsel fees, costs and expenses. Hearings addressing all claims were held on Septem-

ber 19, 2006 and February 21, 2007. A transcript was prepared and both parties submitted proposed findings of fact, conclusions of law, and orders.

## FINDINGS OF FACT

In accordance with section 3502 of the Divorce Code, the court must consider the factors set out below in determining equitable distribution of property. Upon consideration of evidence presented at hearings and the submissions of the parties, this court finds the following:

(1) *Length of marriage.*

Plaintiff Gary W. Felton (Husband) and defendant Colleen E. Felton (Wife) were married on March 22, 1980, in Orange County, California. The parties separated on or about October 10, 2003, when Husband left the marital residence. They were divorced by decree of this court on February 9, 2006.

(2) *Any prior marriage of either party.*

Husband had not been previously married at the time of his marriage to Wife. Wife was married in January of 1973 to Kirby Marshall, but was divorced from him in 1978. Following the issuance of the divorce decree by this court on February 9, 2006, Husband married Dawn Luthe on March 10, 2006. Defendant has not married again.

(3) *Age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each party.*

(a) *Age:* Husband is 54 years of age, having been born on September 6, 1953. Wife is 53 years of age, having been born on February 12, 1954.

(b) *Health:* Husband has hypertension and arthritis in his spine. He sees a therapist for stress related to the divorce. He takes medications for hypertension. Wife has diabetes, asthma and arthritis and has been treated for depression during the parties' divorce proceedings. She has also fractured her left foot and fingers on both hands in recent years. She takes medications for her various conditions.

(c) *Station:* The parties enjoyed a middle-class lifestyle during marriage.

(d) *Amount and sources of income:* Husband is employed by The Pennsylvania State University as a professor of Entomology. He earns $141,444 annually in base salary ($11,787 per month), together with occasional honorariums that total less than $1,000 per annum. Wife is not employed. She has no income.

(e) *Vocational skills; employability:* Husband earned a Bachelor of Science degree in biological science from the University of California-Irvine in 1975, a Master's degree in Entomology from the University of Kentucky in 1983, and a Ph.D. in Entomology from the University of California-Davis in 1988. After holding positions as an assistant professor, associate professor, and full professor at the University of Arkansas from 1990 through 2000, Husband became the head of the Department of Entomology at The Pennsylvania State University on September 1, 2000. This is an advancement in his career.

Wife is currently a full-time student in the College of Education, Department of Rehabilitation Services, at The Pennsylvania State University. She expects to graduate with a Bachelor of Arts degree in 2009 and hopes to continue her education and attain a Master's degree in

2011. Wife has vocational experience as a United States Postal Service worker, substitute teacher (non-certified), retail clerk and parenting class teacher for pregnant teenagers and their children.

(f) *Estate:* Neither party expects any substantial inheritance or legacy.

(g) *Liabilities and needs of each party:*

(i) Husband resides in Bellefonte in a house which is owned by his current wife. Although Husband does not have a mortgage obligation, he contributes to the household by making utility payments. Husband has an automobile loan with a $411.91 monthly payment. Husband makes a monthly payment of $152.28 to Commercial Acceptance Company for an overdrawn account the parties opened at Omega Bank after separation. Husband has a monthly student loan payment of $130. Husband makes monthly COBRA payments of $319.20 for Wife's health insurance. Husband also makes two monthly payments to TIAA-CREF for loans he has taken against his retirement account. The first payment is $286.34 and the second payment is $139.37.

(ii) Wife has a monthly mortgage payment in the amount of $1,364.52 for a residence she acquired after final separation. Her automobile was gifted to her by her aunt. She took a loan, as the result of a gift tax, which costs her $122 per month. Wife's student loans are in deferment and do not require payment at the present time. Wife's disposable monthly income cannot be determined.

(4) *Contribution by one party to education, training or increased earning power of other party.*

(a) Husband completed two graduate degrees during the marriage; however, Husband received graduate as-

sistantships for both degrees and had only two student loans during this time in the total amount of $10,000. Husband also received income from his parents to support the parties while he earned his graduate degrees.

(b) When Husband was fired from his job with the United States Postal Service in 1981, Wife encouraged him to return to school. Wife sold the town home she had owned prior to the marriage and used the profits to pay bills during Husband's post-college studies. Wife initially received approximately $40,000 and subsequent payments from owner-financing of $239 per month for five years.

(c) Wife also contributed $6,000 in retirement benefits from the USPS to pay bills while she was earning additional money from babysitting and employment with J. C. Penney Company. During the parties' marriage, Husband encouraged Wife to return to school to further her education.

(5) *Opportunity of each party for future acquisitions of capital assets and income.*

(a) Husband's salary is $141,444 per year. There was no testimony as to Husband's expectation for future increases in his income.

Husband married again in March 2006. Although Husband's new wife is also a professor at The Pennsylvania State University, there is no evidence that her income is not available to Husband other than in the form of providing him with a residence.

(b) Wife's earning power should increase when she completes her schooling and begins employment.

(6) *Sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.*

Husband receives income from his employment with The Pennsylvania State University. Wife has no current income other than her spousal support from Husband and proceeds from student loans.

(7) *Contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.*

(a) Shortly after the parties married, Wife used the proceeds from the sale of her town home in California to pay for living expenses incurred by the parties and their minor children. These funds were not used to pay for Husband's education. Wife also worked a limited number of part-time jobs to help with the parties' living expenses. Wife's main contribution was as a homemaker during the marriage. After completion of his post-doctoral work, Husband worked throughout the marriage as a faculty member at two universities.

(b) After separation, Wife was responsible for making mortgage payments for the marital residence in State College, Centre County, Pennsylvania. As the result of Wife's failure to make the mortgage payments, the marital residence was foreclosed upon by the mortgagee and sold at sheriff's sale in the summer of 2005. At the time, Wife was receiving approximately $6,600 per month in support from Husband. As the result of Wife's failure to make the mortgage payments, Wife is responsible for the dissipation of $17,989.58 of the marital estate, which represents the equity in the marital resi-

dence at the time Wife first failed to make mortgage payments on the marital residence in May of 2004.

(c) Prior to separation, the parties planned to purchase a second vehicle using a loan from Husband's TIAA-CREF account and the parties' 2002 tax refund. After the loan was received from TIAA-CREF, Wife used $9,000 of the loan to purchase kitchen items in December 2002 without Husband's consent. As the result of Wife's misuse of the funds from the retirement loan, Wife is responsible for the dissipation of $9,000 of the marital estate.

(8) *Value of property set apart to each party.*

(a) The parties stipulated that the marital portion of Husband's TIAA-CREF retirement account had a value at separation as of December 13, 2005 of $83,912.24. At the time of the first hearing before the court, this figure had risen to $157,035.53. Neither of these figures were challenged by Wife. Husband has provided $10,000 to Wife as a partial distribution from his TIAA-CREF retirement account through payments from his income over time and through a loan he took against the account.

(b) Household property from the former marital residence had a value of approximately $9,300 at the time of purchase.

(c) The parties' Salvador Dali lithograph "Agony of Love" has a value of $2,500.

(d) The parties purchased a jointly-titled 2003 Honda Civic Hybrid two months prior to final separation with no trade-in or down payment. The car is valued at $15,096 and has a date-of-hearing loan balance of $9,697.01, leaving a net equity value of $5,398.99.

(e) The 1996 Honda Accord sedan for which Wife received a $100 credit in the purchase of her 2004

Honda CRV van. This $100 value was not challenged by Husband.

(9) *Standard of living during marriage.*

The parties had a middle class standard of living during the marriage.

(10) *Economic circumstances of each party, including federal, state, and local tax ramifications, at the time division of property is to become effective.*

There are no significant tax ramifications from the division of property.

(11) *Whether a party will be serving as custodian of any dependent minor children.*

The parties' children are both adults and currently enrolled in college.

(12) *Marital misconduct.*

The marriage ended because Husband was involved in a relationship with another woman. He admitted on cross-examination that he began a relationship with Ms. Dawn Luthe, whom he subsequently married, in September of 2002, more than one year prior to the parties' separation.

(13) *Whether the party seeking alimony lacks sufficient property to provide for the party's reasonable needs.*

(a) Husband has provided Wife with additional support monies and benefits since the parties' separation so that Wife can improve her economic situation and provide for her own needs in the future. In addition to spousal support payments, Husband provided $5,909.13 over several months in additional income to Wife after separation. Husband has provided Wife with $1,000 for payment of her attorney fees.

(b) Since the spring of 2006, Husband has been paying the tuition discount for Wife at The Pennsylvania State University and will continue to do so through spring of 2009.

(c) The cost of Wife's tuition, fees and books for the 2006-2007 academic year is $17,861, without the tuition discount paid by Husband. The anticipated amount of student aid available to Wife for the 2006-2007 academic year is $16,138.

(14) *Whether the party seeking alimony is incapable of self support through appropriate employment.*

Wife will be capable of self-support through employment once she obtains her undergraduate degree.

## CONCLUSIONS OF LAW

(1) The trial court has broad discretion in determining equitable distribution of marital property. *Twilla v. Twilla,* 445 Pa. Super. 86, 89, 664 A.2d 1020, 1022 (1995).

(2) Equitable distribution does not necessarily mean an equal division. *Platek v. Platek,* 309 Pa. Super. 16, 454 A.2d 1059 (1982).

(3) There is a presumption that property acquired by either party during the marriage is marital property. 23 Pa.C.S. §3501(b).

(4) In equitable distribution of marital property, the court must view the parties' situation in light of the totality of the circumstances and consider all of the relevant factors set forth in the divorce code at 23 Pa.C.S. §3501(a). 23 Pa.C.S. §3502.

(5) "The trial court has the authority to divide the [marital property] as the equities presented in [a] par-

ticular case may require." *Teodorski v. Teodorski,* 857 A.2d 194, 199 (Pa. Super. 2004). (internal quotation marks omitted)

(6) Marital property must be distributed with reference to value proximate to the date of distribution. *Wellner v. Wellner,* 699 A.2d 1278, 1283 (Pa. Super. 1997).

(7) The trial court in an equitable distribution matter is entitled to assess the credibility of the evidence presented. *Miller v. Miller,* 744 A.2d 778, 790 (Pa. Super. 1999).

(8) The portion of a pension attributable to the period from commencement of marriage to date of separation is marital property. *Brown v. Brown,* 447 Pa. Super. 424, 669 A.2d 969 (1995).

(9) "An award of counsel fees is warranted when it will promote the fair administration of justice by enabling the dependent spouse to maintain or defend the case without being placed at a financial disadvantage." *Miller v. Miller,* 744 A.2d 778, 790 (Pa. Super. 1999).

(10) Relevant factors to consider in determining whether to award counsel fees include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Id.*

(11) "The purpose of alimony is … to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Twilla,* 445 Pa. Super at 90, 664 A.2d at 1022.

(12) "Alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution and development of an appropriate employable skill." *Id.*

(13) To determine whether alimony is necessary, the court must consider all relevant factors, including those statutorily prescribed at 23 Pa.C.S. §3701(b). *Twilla, supra* at 90-91, 664 A.2d at 1022.

## DISCUSSION

Husband requests a 60/40 division of marital property in favor of Wife with no alimony to be paid. Wife requests a 50/50 division of marital property with lifetime alimony, as well as Husband's paying counsel fees and costs.

The parties were married for approximately 26 years. Two children were born of the marriage. During the marriage, Husband was employed full-time and provided the family with financial support. During the marriage, Wife was employed to a limited degree. The parties enjoyed a middle class lifestyle during their marriage.

Husband is 54 years old and Wife is 53 years old. Both parties are in relatively good health for their age. Husband has hypertension and arthritis in his spine and sees a therapist for stress related to the divorce proceedings. He takes medications for hypertension. Wife has diabetes, asthma and arthritis and has been treated for depression during the parties' divorce litigation. She has also broken her left foot and fingers on both hands in recent years. She takes medications for her various conditions.

Husband is employed by The Pennsylvania State University with an income of $141,444 per year, plus approximately $1,000 per year in honorariums. Wife is a full-time student. Wife receives alimony pendente lite and tuition discount payments from Husband.

Husband married again and lives with his new wife in a house titled solely in her name. Husband therefore has

no rent or mortgage payments. Wife has a mortgage on her house with monthly payments of $1,364.52.

The parties accumulated considerable debt during their marriage.

Based upon the factors discussed above, the court determines an equitable division of the marital assets dictates a division such that 50.2 percent of the parties' total marital equity is allocated to Wife and 49.8 percent of the total marital equity is allocated to Husband.

### Counsel Fees

Wife has requested Husband pay her counsel fees and costs associated with this matter. Counsel fees, though not awarded automatically upon the request of either spouse, are appropriate when necessary to put the parties on a par in defending their rights or allowing a spouse to maintain or defend an action for divorce. *Johnson v. Johnson,* 365 Pa. Super. 409, 529 A.2d 1123 (1987). In making a determination to award counsel fees, the court must consider "the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Miller v. Miller,* 744 A.2d 778, 790 (1999). Court costs may also be awarded to any party within the trial court's discretion and a court may award counsel fees based upon findings of disparity in the parties' earnings and their respective ability to pay. *Nuttall v. Nuttall,* 386 Pa. Super. 148, 562 A.2d 841 (1989). There is no standard fixed for determination of the amount of counsel fees other than that it must be reasonable. *Jack v. Jack,* 253 Pa. Super. 538, 385 A.2d 469 (1978).

Wife has been receiving alimony pendente lite of $2,400 per month since March 1, 2006, pursuant to an order of this court on February 9, 2006. Wife has incurred fees of $8,620.61 owed to her former attorneys, Goodall & Yurchak P.C., and owes $3,500 to her current attorney, H. Denning Mason, Esquire. Based upon property and assets Wife is receiving in equitable distribution in this matter, and on her inability to pay her various other debts, the court determines a partial award of counsel fees is warranted. Accordingly, Husband is responsible for one-half ($4,310.31) of the $8,620.61 due Goodall & Yurchak P.C. and 60 percent ($2,100) of the $3,500 due H. Denning Mason, Esquire. Furthermore, and for the same reasons, Husband shall pay the entire costs of the transcripts of the two hearings, $774.80.

## Alimony

The court may allow alimony, as it deems reasonable, to either party if it finds that alimony is necessary. The legislature sets out 17 factors to be considered in determining the nature, amount, duration and manner of payment of alimony. Most of these factors have been discussed relative to the distribution of property. The factors not previously considered, or not considered in sufficient detail, are set forth below:

(12) *The contribution of a spouse as a homemaker.* Wife is currently providing for the needs of the parties' youngest child as she pursues her college education.

(14) *The marital misconduct of either of the parties during the marriage. The marital conduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to*

*alimony.* The marriage ended because Husband was involved in a relationship with another woman. He admitted on cross-examination that he began a relationship with Ms. Dawn Luthe more than one year prior to the parties' separation. He subsequently married Ms. Luthe in September of 2002.

(15) *The federal, state and local tax ramifications of the alimony award.* This factor, added by the 1988 amendments to the Divorce Code, was not addressed by either party. It has therefore been given no weight by this court in its decision.

(16) *Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under chapter 35 (relative to property rights), to provide for the party's reasonable needs.* It is apparent to the court that the equitable distribution of property ordered herein will not be sufficient to provide for Wife. The only viable solution for Wife's needs is an award of long-term alimony.

The goal of alimony is to effect economic justice between the parties. *Williams v. Williams,* 373 Pa. Super. 143, 540 A.2d 563 (1988). Prior to 1980, alimony was not a statutory remedy available in divorces. The Divorce Code of 1980 established alimony as a rehabilitative and limited remedy. The requesting party was required to establish his or her inability to support himself or herself with employment or assets. The amendments in 1988 eliminated the threshold requirement of having to establish an inability of self support, changing the nature of alimony to be more flexible in allowing a court to effectuate economic justice. Alimony is no longer just for limited durations; it can be permanent. It can also be

awarded even when the requesting spouse is employed.

Alimony is not to be used to reward or punish one party or the other. The goal of alimony is to ensure that the reasonable needs of the party unable to support himself or herself through employment, are met. *Twilla v. Twilla,* 445 Pa. Super. 86, 90, 664 A.2d 1020, 1022 (1995). Alimony is based on the reasonable needs of the recipient based on the lifestyle and standard of living established by the parties during the marriage, as well as on the payor's ability to pay. *Id.* A party may be employed, but still unable to reach the marital standard of living. In such a case, alimony is appropriate. *Isralsky v. Isralsky,* 824 A.2d 1178 (Pa. Super. 2003). What the payor can afford to pay is the question, not what he is willing to pay. *Karp v. Karp,* 455 Pa.Super. 21, 27, 686 A.2d 1325, 1328 (1996).

Wife should be able to support herself on the $2,400 per month she currently receives in temporary alimony. Her income and expense statement clearly overstates her monthly needs as $5,335.52. To allow Wife the opportunity to pursue her education until she attains her degree and the ability to earn a living, Husband must meet her monthly expenses. Wife is additionally entitled to alimony while she secures a job in her chosen field.

The court determines an award of alimony to Wife is necessary. The court determines economic justice and Wife's reasonable needs cannot be achieved solely by equitable distribution of the marital property as outlined below. In the present case, given Husband's earnings, his future earning capacity, and the security of his position with The Pennsylvania State University, this court

determines that economic justice will be served by requiring Husband to pay alimony to Wife.

Evaluation of the factors in the instant case dictates the following order be entered:

## ORDER

And now, January 24, 2008, after hearing and upon consideration of arguments of counsel, this court enters an order distributing the parties' marital assets such that 50.2 percent of the parties' total marital equity is allocated to Wife, and 49.8 percent of the total marital equity is allocated to Husband.

Specifically, the marital assets are distributed as follows:

| Assets & Secured Liabilities | Value | To Husband | To Wife |
| --- | --- | --- | --- |
| *Retirement benefits/ accounts* | | | |
| TIAA-CREF | $ 83,912.24 | $ 57,899.45 (69%) | $ 26,012.79 (31%) |
| *Other* | | | |
| 2003 Honda Civic Hybrid Sedan | $ 15,096.00 | $ 15,096.00 | |
| Less: Honda financing | $ (9,697.01) | $ (9,697.01) | |
| 1996 Honda Accord Sedan (trade-in value) | $ 100.00 | | $ 100.00 |
| Household property | $ 9,300.00 | | $ 9,300.00 |
| Salvador Dali "Agony of Love" lithograph | $ 2,500.00 | $ 2,500.00 | |
| Dissipation of real property | $ 17,989.58 | | $ 17,989.58 |
| Dissipation of retirement assets | $ 9,000.00 | | $ 9,000.00 |
| *Unsecured Liabilities:* | | | |
| *Credit cards* | | | |

526

| | | | |
|---|---|---|---|
| Chase VISA | $ (3,018.39) | $ (3,018.39) | |
| *Other liabilities* | | | |
| Upper Halfmoon Water Company | $ (762.93) | $ (762.93) | |
| *Net Worth* | $ 124,419.49 | $ 62,017.12 | $ 62,402.37 |
| *Division of Marital Estate* | $ 124,419.49 | $ 62,017.12 | $ 62,402.37 |

(1) Husband, Gary W. Felton, shall have sole ownership of the 2003 Honda Civic Hybrid sedan currently titled in the parties' joint names. Wife shall execute all documents necessary to transfer sole ownership of this vehicle into Plaintiff's name alone as soon as reasonably possible.

(2) Wife shall retain the $100 credit she received for the trade-in of the 1996 Honda Accord sedan in purchasing her current vehicle.

(3) Husband shall receive the Salvador Dali lithograph, "Agony of Love."

(4) Wife shall return all non-marital personal property belonging to Husband in Wife's possession, including but not limited to Husband's scientific data and books, vinyl record collection, and baseball memorabilia collection.

(5) Husband shall return all non-marital personal property belonging to Wife in Husband's possession.

(6) Husband shall be solely responsible for the payment of the balance owed on the following obligations:

(a) Chase Bank Visa credit card ($3,018.39).

(b) Upper Halfmoon Water Company ($762.93).

(7) Husband shall be responsible for payment of the following marital liabilities:

(a) Two loans taken against Husband's TIAA-CREF retirement account.

(b) Automobile loan with Honda Finance Corporation for Husband's 2003 Honda Civic.

(c) Obligation with Commercial Acceptance Corporation.

(8) Husband's retirement benefits with TIAA-CREF shall be divided between Husband and Wife, with Husband to receive a 69 percent share and Wife to receive a 31 percent share of the benefits that have accrued until October 10, 2003. This division shall be effective as of October 10, 2003, the date of the parties' separation, and shall include any increase or decrease in Wife's proportionate share until the date the separate account for Wife has been created and funded. Once the total value of Wife's share of these benefits has been calculated by TIAA-CREF, the amount due Wife shall be reduced by $10,000, this being the total of the advance payments made by plaintiff since the parties' separation. This $10,000 shall remain in Husband's account. The transfer of the 31 percent interest in this account to Wife shall be accomplished through a Qualified Domestic Relations Order (Q.D.R.O.) that will be prepared by an actuary who shall value the TIAA-CREF account pursuant to 23 Pa. C.S. §3501(c), which requires any increase in retirement benefits post-separation to be included in marital property as long as the increase is not attributable to the efforts or contributions of the participant spouse. This Q.D.R.O. shall be approved by counsel for both parties, submitted for approval to the plan administrator for TIAA-CREF, and, following approval by the said plan administrator, submitted to the court for its approval. The

domestic relations order shall be sent in final form to the aforesaid plan administrator for TIAA-CREF for the qualification of the order and the transfer of the required funds. The remaining amount of Husband's retirement account with the TIAA-CREF shall remain the sole property of Husband. All costs incurred in the preparation and approval of this Q.D.R.O., including the invoice for the services of an actuary, shall be paid by Husband.

It is further ordered as follows:

(1) Effective immediately, the payment for alimony pendente lite previously required by this court in its order dated February 9, 2006, shall cease. Husband shall now be obligated to begin payments of alimony to Wife as follows:

(a) Commencing January 1, 2008, Husband shall pay alimony in the amount of $2,400 per month. These payments shall continue until June 30, 2010, one year beyond the anticipated date of completion of Wife's undergraduate studies. In the event Wife elects to pursue her Master's degree within one year of the completion of her undergraduate studies, alimony in the same amount shall continue until one calendar year beyond the anticipated date of completion of those studies. All payments shall terminate upon the death of Wife.

(b) Husband shall maintain a life insurance policy on his life naming Wife as the sole primary and irrevocable beneficiary of the death benefits until the death of Husband, the death of Wife, or Wife's completion of her education, whichever event shall first occur. Husband shall at all times keep the policy in full force and effect, shall promptly pay any and all dues, premiums, and assessments thereon, shall not borrow against or encumber

the same, and shall promptly show the paid premium receipts to Wife upon written request. The life insurance policy shall be in the form of an annuity or any comparable insurance policy, allowing for monthly payments, in accordance with item (a) above, to continue in the event Wife is predeceased by husband.

(2) The costs of transcribing both hearings ($774.80) shall be the sole responsibility of Husband. If not already paid, this obligation shall be satisfied by Husband within 60 days from the date of this order.

(3) Husband shall pay the sum of $4,310.31 to Goodall & Yurchak P.C., for legal services provided by that firm to Wife.

(4) Husband shall pay the sum of $2,100 to H. Denning Mason, Esquire, as the current attorney for Wife.

(5) Husband shall continue to provide COBRA payments for Wife's health insurance pursuant to the terms of the order dated February 9, 2006.

(6) Husband shall continue to provide tuition discount payments pursuant to the terms of the order dated February 9, 2006.

(7) Except as set forth herein, all claims by either Husband or Wife for spousal support, alimony pendente lite, alimony, counsel fees, costs, and equitable distribution of property are hereby dismissed, with prejudice.