J-S12030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAWN E. HUPP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG T. WHEELAND | : | No. 1444 MDA 2016 |

Appeal from the Decree August 4, 2016
In the Court of Common Pleas of Northumberland County
Civil Division at No(s): CV-2010-2026

BEFORE: PANELLA, J., OTT, J. and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                **FILED JUNE 12, 2017**

Dawn E. Hupp appeals from the final decree entered on August 4, 2016, in the Court of Common Pleas of Northumberland County that divorced the parties from the bonds of matrimony and resolved equitable distribution claims. In this timely appeal, Hupp claims seven errors[1] on the part of the trial court regarding the equitable distribution of marital property. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm the decree granting the parties' divorce, and affirm the order determining equitable distribution in part on the basis of the trial court opinion and Revised Master's Report as adopted by the trial court

---

[1] While there are six numbered claims in Hupp's "Statement of the Questions Involved", **see** Appellant's Brief at 2-3, one of the claims is broken into two subparts, making a total of seven claims of error.

in its opinion, and reverse the order determining equitable distribution in part as stated in the trial court opinion at pages 2-3, 6.

Initially, we note our standard of review:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Morgante v. Morgante*, 119 A.3d 382, 386-87 (Pa. Super. 2015) (citations omitted). Additionally,

The Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves "economic justice."

*Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016) (citation omitted).

- 2 -

For ease of reference, we quote the relevant factual history as related by the trial court in its Pa.R.A.P. 1925(a) opinion.

The parties were married on May 19, 2001. This was [Wheeland's] third marriage, and it was [Hupp's] second marriage. Each had children from the prior marriages. They had a son together, born June 8, 2005. [Hupp] was employed by the Lewisburg School District as a teacher's aide, earning approximately $20,000.00 per annum. On the other hand, [Wheeland] was a federal employee at the United States Penitentiary in Lewisburg, with earnings in 2012 of $58,707.00. The marriage lasted nine years, with the date of separation on April 23, 2010. The exclusive possession of the marital home was awarded to [Hupp] by court decree on December 12, 2010.

The marital home was constructed around the time of the marriage. The land was a 3 acre parcel donated to them by [Hupp's] parents, carved out of the family farm. [Wheeland] contributed his own funds of $20,000.00 toward the construction from his sale of his own home. The marital home now has a fair market value of $225,000.00. There are two mortgages thereon totaling $97,420.58, leaving an equity of $127,579.49.

As the Master noted, [Hupp] desired foremost to be awarded the realty in view of its location adjacent to her family's farm. [Hupp] also claimed tangible property of $9,125.00 that was awarded to her.

The other large assets are [Hupp's] pension of $38,377.98 as her marital portion established by the Master. [Wheeland] has a savings plan in connection with his employment (Thrift Savings Plan) that was valued by the Master as to [Wheeland's] marital portion in the sum of $97,711.74. Lastly, there is [Wheeland's] federal pension as to which it was determined that the most suitable approach is to divide, by appropriate qualified order for distribution (COAP), as the time of [Wheeland's] retirement, as noted by the Master as "the safest route."

Since [Hupp] had exclusive possession of the marital home for five and half years prior to the award here, there had to be taken into account [Wheeland's] credit for his share in the loss of the fair rental value at $1,800.00 per month; thus, his loss of

rental income during [Hupp's] exclusive possession was $54,000.00. However, [Hupp] was making mortgage payments to which she was then entitled a credit from [Wheeland] that was in the undisputed amount of $18,822.75.

The parties were both in their mid-forties, in relatively good health. Neither contributed to the education or training of the other spouse. [Hupp] had some training and experience as a dental assistant, so she could pursue this avenue for increased earnings, and to work in the summer months. [Wheeland's] employment was stable, but he did not have much of any increase in salary over the past four years prior to the hearing. There is no separate property. The parties had a modest standard of living, with no unusual tax ramifications to transfer of assets.

[Hupp] had custody of their teenage son, for which she was receiving child support of approximately $655.00 per month, as well as APL of $526.00.

As requested, [Hupp] was awarded the marital home. However, there is a substantial amount of equity therein to which [Wheeland] was entitled to his proportionate share. The scheme devised was for [Hupp] to retain her entire pension she earned during the marriage. She also owed [Wheeland] a substantial rental credit as these divorce proceedings dragged out over four years until the Master's hearing was even held. In making the calculations there was a net obligation for [Hupp] to pay [Wheeland] the sum of $33,748.99 to achieve economic accord.

This court also considered the possibility that [Hupp] may not elect or be able to pay [Wheeland's] share within a reasonable time (60 days) and also retain the home. In that event, the realty would be placed for sale with a realtor with her receiving a greater share of the net proceeds by an additional $27,167.01 to her.

Trial Court Opinion, 10/26/2016, at 1-3.

Hupp's issues are: 1) Whether the trial court erred in allowing additional evidence to be presented to the Master after remand; 2A) Whether the trial court erred in splitting the marital estate on a 50/50 basis; 2B) Whether the trial court erred in granting a Fair Rental Credit to husband

and further erred in calculating that credit; 3) Did the trial court err in determining a 50/50 division without applying statutory factors and without considering parties' disparate incomes; 4) Whether the trial court erred in failing to award alimony and determining the 50/50 division of the marital estate met Hupp's reasonable needs without applying statutory factors or considering parties' disparate incomes; 5) Whether the trial court erred in distributing parties' pensions and Wheeland's TSP account; and 6) Whether the trial court erred in finding Hupp received $9,125.00 of tangible property.

Our review of the certified record leads us to the conclusion that the trial court correctly rejected issues, 1, 2A, 3, 4, 5 and 6. Issue 1 is an evidentiary matter in which updated values of assets were presented. We note that values closer to the proximate date of distribution are favored. **See Oak v. Cooper**, 638 A.2d 208 (Pa. 1994). Such evidentiary issues are within the sound discretion of the court. **See K.T. v. L.S.**, 118 A.3d 1136, 1165 (Pa. Super. 2015). Issues 2A, 3, 4, and 5 all address various aspects of splitting the marital estate on a 50/50 basis. We rely upon the sound analysis of the trial court, including the adoption of the Revised Master's Report, in affirming the trial court on these issues. Issue 6 involves factual determinations of the distribution of certain tangible property. The trial court noted that Hupp was not specific in this allegation and therefore the trial court did not amend said distribution. However, our review of the certified record found two items that support Hupp's claim. These involve

blue barrels and a Suzuki motorcycle, both valued at $200.00. Our review of the record indicates that there is no dispute that these belong to Wheeland and that he can take possession of them. We see no reason to amend the order given the $400.00 total value of the property is *de minimis* in light of the approximately $700,000.00 value of the marital estate.

However, with respect to issue 2B, we find the trial court committed an abuse of discretion regarding the calculation of the amount of fair rental value credit Hupp owed to Wheeland. Therefore, we limit our discussion to this single issue.

By way of background, we include the marital asset distribution chart, taken from the Revised Master's Report[2]:

| Marital Asset | Total | Husband | Wife |
|---|---|---|---|
| | $707,448.65 | 355,645.63 | 351,803.03 |
| Tangibles | 14,125.00 | **9,125.00** | **5,000.00** |
| Jeep Liberty | 7,458.00 | | 7,458.00 |
| Dodge Truck | 2,342.00 | 2,342.00 | |
| Volkswagen | 1,000.00 | | 1,000.00 |
| Wife's Pension | 38,337.98 | | 38,337.98 |
| Husband's TSP | 121,831.00 | 121,831.00 | |
| Husband's FERS | 394,775.25 | 197,387.63 | 197,387.63 |
| Real Estate | 225,000.00 | | 225,000.00 |
| PHFA Debt | (81,787.30) | | (81,787.30) |
| HELOC Debt | (15,633.28) | | (15,633.28) |
| **Fair Rental Value Credit** | | **2,460.00** | **(2,460.00)** |
| Post-Separation | | | |

---

[2] We have highlighted those figures which are at issue.

Debt Credit                                              22,500.00           (22,500.00)

The equitable distribution chart created by Master Michael Suders, Esquire, demonstrates how the total assets of $707,448.66[3] have been allocated so that each party receives approximately 50%. This 50/50 split was accepted by the trial court. *See* Trial Court Opinion, at 1 ("The overall distribution on an equal 50-50 basis was appropriate here as recommended by the Master after due consideration of the relevant factors set forth in 23 Pa.C.S. § 3502; *Teodorski v. Teodorski*, 857 A.2d 194 (Pa. Super. 2004)."). Pursuant to the chart, Wheeland would receive $355,645.63 and Hupp would receive $351,803.03.[4] However, these totals are based upon a scrivener's error: Master Suders inadvertently transposed the figures related to "Tangibles" thereby improperly granting Wheeland $9,125.00 and Hupp $5,000.00. It is apparent by comparing page 22 of the Revised Master's Report, dated February 5, 2016, to the chart, that those numbers have been transposed. Recalculating based upon the proper apportionment of tangibles, the totals are: Wheeland - $351,520.63; Hupp - $355,928.03. By this recalculation, correcting the error, Wheeland receives 49.69% and Hupp

_____

[3] Our calculation of the figures supplied in the Equitable Distribution chart is slightly different from Master Suders'. The total for husband is the same, but Wife's total is $351,773.03 – thirty dollars less than the figure provided in the chart. Accordingly, the total assets would be $707,418.66.

[4] Using pecentages, Wheeland would receive 50.27% and Hupp would receive 49.73% of the marital assets.

receives 50.31% of the marital assets. The trial court's final decree correctly shows Wheeland receiving $5,000.00 in tangibles and Hupp receiving 9,125.00 in tangibles.[5]

Turning to the issue of the fair rental value credit, the Master determined that Wheeland was owed $1,800.00 per month[6] for 60 months when it was undisputed that Hupp had exclusive possession of the marital residence. However, for the same period of time, Hupp was paying $1,718.00 per month on the mortgages. The $82.00 per month difference for 60 months totals $4,920.00. The fair rental value credit was then determined by granting Wheeland half that sum, $2,460.00 and subtracting the identical amount from Hupp's side of the ledger. It is important to note that the Master also credited Wheeland, and debited Hupp, with $22,500.00 in post-separation debt which is directly attributable to Wheeland's mortgage payments while Hupp was in exclusive possession of the marital property. **See** Revised Master's Report, 2/5/2016 at 18. We note that where fair rental value is at issue, credit for mortgage payments is usually taken into account within that calculation. **See Trembach v. Trembach**, 615 A.2d 33, 37 (Pa. Super. 1992).

However, in ruling on exceptions, the trial court determined:

_____

[5] See our discussion on page 6, *supra*.

[6] $1,800.00 per month rental value was a stipulated amount.

> The record before the Master established the fair rental value at $1,800.00 per month; thus, [Wheeland's] loss of rental income during [Hupp's] exclusive possession was $54,000.00. However, [Hupp] was making mortgage payments to which she was then entitled a credit from [Wheeland] that was in the undisputed amount of $18,822.75.

Trial Court Opinion at 2-3.

The trial court then subtracted the $18,822.75[7] from the $54,000.00 and determined Hupp owed Wheeland an additional $33,748.99[8] In making this determination, the trial court appears to have inadvertently double credited Wheeland with his mortgage payments. The result of this miscalculation, granting Wheeland an additional $33,749.99 and subtracting $33,748.99 from Hupp, results in a final distribution significantly skewed in favor of Wheeland. Specifically, Wheeland would receive $382,809.62 while Hupp would receive $324,639.04. This equates to 54.11% to Wheeland and 45.89% to Hupp. Compounding the problem, in addition to miscalculating the fair rental value, the trial court neglected to adjust any values of other items of distribution to retain the overall 50/50 division of the marital estate that was recommended by the Master and accepted by the trial court.

---

[7] The difference between the trial court's $18,000 figure and the Master's $22,000 figure is explained on page 18 of the Revised Mater's Report.

[8] We do not know how this figure was determined. By our calculations, Hupp would owe Wheeland an additional $35,177.25.

Because the trial court erred in its calculation of the fair rental value, we vacate that portion of the trial court's decision and remand this matter to the trial court to reinstate the Master's calculations regarding fair rental value so that the 50/50 division remains.[9]

As noted above, in all other aspects we agree with the trial court's sound reasoning. Accordingly, on those issues, we rely on the trial court's opinion and Revised Master's Report as adopted by the trial court. The parties are directed to attach a copy of both documents in the event of further proceedings.

That portion of the decree granting divorce is affirmed; that portion of the decree addressing equitable distribution is affirmed in part and reversed in part. The trial court is directed to amend the decree in accordance with this decision. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017

---

[9] The portion of the trial court's opinion we are reversing is found at the last paragraph on page 2 to that paragraph's conclusion on page 3.

- 10 -

Circulated 05/24/2017 03:41 PM

IN THE COURT OF COMMON PLEAS OF
NORTHUMBERLAND COUNTY, PENNSYLVANIA
CIVIL DIVISION

2016 OCT 26 PM 4: 02

PROTHONOTARY

DAWN E. HUPP,
　　　　　　　PLAINTIFF

　　　VS.

CRAIG T. WHEELAND,
　　　　　　　DEFENDANT

:
:
:
:
:
: NO. CV-10-2026
:
: IN DIVORCE

## OPINION

Saylor, P.J.

　　This appeal is from a final decree in divorce entered on August 4, 2016, that equitably distributed the marital property. In most respects this Court adopted the conclusions of the Master that he set forth in a comprehensive report; however, the undersigned did an independent analysis as set forth in a discussion accompanying the final decree in making certain revisions to the Master's findings and conclusions.

　　The overall distribution on an equal 50-50 basis was appropriate here as recommended by the Master after due consideration of the relevant factors set forth in 23 Pa. C.S. § 3502; *Teodorski v. Teodorski,* 857 A.2d 194 (Pa. Super. 2004). In Northumberland County, the Master conducts the hearing; thus, this Court is "limited to the evidence presented before the master." *Cunningham v. Cunningham,* 548 A.2d 611, 613-14 (Pa. Super. 1988). The Master's findings will not be set forth again in detail herein; a summary thereof follows.

　　The parties were married on May 19, 2001. This was Husband's third marriage, and it was Wife's second marriage. Each had children from the prior marriages. They had a son together, born on June 8, 2005. Wife was employed by the Lewisburg School District as a teacher's aide, earning approximately $20,000.00 per annum. On the other hand, Husband was

1

34

E-mailed to client 10/31

a federal employee at the United States Penitentiary in Lewisburg, with earnings in 2012 of $58,707.00. The marriage lasted nine years, with the date of separation on April 23, 2010. The exclusive possession of the marital home was awarded to Wife by court decree on December 12, 2010.

The marital home was constructed around the time of the marriage. The land was a 3 acre parcel donated to them by Wife's parents, carved out of the family farm. Husband contributed his own funds of $20,000.00 toward the construction from his sale of his own home. The marital home now has a fair market value of $225,000.00. There are two mortgages thereon totaling $97,420.58, leaving an equity therein of $127,579.49.

As the Master noted, Wife desired foremost to be awarded the realty in view of its location adjacent to her family's farm. Wife also claimed tangible property of $9,125.00 that was awarded to her.

The other large assets are Wife's pension of $38,377.98 as her marital portion established by the Master. Husband has a savings plan in connection with his employment (Thrift Savings Plan) that was valued by the Master as to Husband's marital portion in the sum of $97,711.74. Lastly, there is Husband's federal pension as to which it was determined that the most suitable approach is to divide, by appropriate qualified order for distribution (COAP), at the time of Husband's retirement, as noted by the Master as "the safest route."

Since Wife had exclusive possession of the marital home for five and a half years prior to the award here, there had to be taken into account the Husband's credit for his share in the loss of the fair rental value of such home during that time frame. The record before the Master established the fair rental value at $1,800.00 per month; thus, his loss of rental income during Wife's exclusive possession was $54,000.00. However, Wife was making mortgage payments to

which she was then entitled a credit from Husband that was in the undisputed amount of $18,822.75.

The parties were both in their mid-forties, in relatively good health. Neither contributed to the education or training of the other spouse. Wife had some training and experience as a dental assistant, so she could pursue this avenue for increased earnings, and to work in the summer months. Husband's employment was stable, but he did not have much of any increase in salary over the past four years prior to the hearing. There is no separate property. The parties had a modest standard of living, with no unusual tax ramifications to transfer of assets.

Wife had custody of their teenage son, for which she was receiving child support of approximately $655.00 per month, as well as monthly APL of $526.00.

As requested, Wife was awarded the marital home. However, there is a substantial amount of equity therein to which Husband was entitled to his proportionate share. The scheme devised was for Wife to retain her entire pension she earned during the marriage. She also owed Husband a substantial rental credit as these divorce proceedings dragged out over four years until the Master's hearing was even held. In making the calculations there was a net obligation for Wife to pay to Husband the sum of $33,748.99 to achieve economic accord.

This court also considered the possibility that Wife may not elect or be able to pay Husband's share within a reasonable time (60 days) and also retain the home. In that event, the realty would be placed for sale with a realtor with her receiving a greater share of the net proceeds by an additional $27,167.01 to her. See *Dean v. Dean*, 98 A.3d 637 (Pa. Super. 2014) (economic justice is not served through the indefinite delay of payment of a spouse's share of the marital estate).

Wife's Statement of Matters Complained of on Appeal are hereinafter listed and

3    36

addressed as follows:

### 1.  It was error to allow Master to hear additional evidence.

There was proper consideration of updated values upon a remand to the Master in order to make a property determination of such values near the time of distribution, especially in view of the inordinate delays occurring in this case.  *Sutliff v. Sutliff*, 543 A.2d 534 (Pa. 1988).

### 2.  It was error to divide on a 50/50 split without discussion of statutory factors.

The statutory factors in Section 3502(a) of the Divorce Code were set forth by the Master on page 7 of his report and the facts relating thereto were fully discussed throughout his thorough thirty-one page report. The relevant facts were summarized in this opinion as well, with respect to the criteria applied in reaching the court's conclusions.

### 3.  It was error to not consider the difference in the parties' incomes.

Wife misstates Husband's income as being more than $74,000.00 which is not supported by the record. Husband's earnings were flat in the range of $59,000.00. Wife had a greater earning capacity than her current earnings working only 9 months out of the year as a teacher's aide.

### 4.  It was error in not distributing to Wife a portion of the Thrift Savings Plan at this time.

The request by Wife to be awarded the real estate then required an offset from the other assets (including the TSP) to which she was entitled a proportionate share. Accordingly, the net award requires Wife to pay a certain sum to Husband.

4    37

### 5. It was error to defer distribution to Wife from Husband's federal pension

The court adopted the Master's considered view that the Wife would benefit the most by receiving her share of the pension at the time of retirement, for which the pension was designed for financial assistance at that time in her life and in advanced age.

### 6. It was error to award Husband a rental credit

The standards for an award of rental credit were summarized in *Trembach v. Trembach*, 615 A.2d 33, 37 (Pa. Super. 1992):

> "First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is to because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest which is generally one-half. Finally, we note that whether the rental credit is due and the amount thereof is within the sound discretion of the court of common pleas."

There was no error here in this award of a rental credit to Husband. There is no valid equitable defense thereto. Compare *Lee v. Lee*, 978 A.2d 380 (Pa. Super. 2009) (Protection from Abuse Order of no contact). Husband was requested to leave when Wife obtained an order for exclusive possession after her filing for divorce.

**7. It was error to include the marital real estate in the 50/50 award as the home was built on Wife's non-marital realty, and her other contributions.**

The land was donated to the parties around the time of their marriage, and it was placed in the names of both of them. They constructed a home together, with Husband utilizing $20,000.00 from the sale of his prior home. Clearly, there was no basis for the home not to be fully considered as marital property subject to distribution with both parties making fairly equal contributions as to its value over the course of the marriage.

**8. It was error to require Wife to pay Husband $33,748.99 for her to keep the marital residence.**

It is unclear to the court as to the error being asserted by Wife by this bald statement. This is the calculated amount of her obligation to Husband under the distribution scheme requested by her.

**9. It was error to allow only 60 days for Wife to refinance the marital residence.**

In the event Wife required a reasonable extension of time, a petition setting forth the circumstances would have been readily considered by the court.

**10. It was error to find that Wife received $9,125.00 in personal property as Husband admitted he had $2,000.00 of such property.**

It is not clear exactly what Wife is referring to or where in the record the admission appears. This may be in reference to a 560 Suzuki motorcycle as to which there was testimony by Wife that even though it was in her father's barn she would make it available to Husband. Yet this was listed by the appraiser as having a value of only $200.00. (Master's report p. 22). In any event, the Master found as to this motorcycle that "no value was established on the record."

6  39

**11.    It was error in not awarding Wife alimony.**

After due consideration of the criteria for an award of alimony under Section 3701(b) of the Divorce Code, the Master concluded that Wife can meet her reasonable needs after the divorce. There was cited by the Master the case of *Teodorski v. Teodorski,* supra, which is instructive that a relatively short marriage (six years) and the number of years (four and a half years) that APL has already been paid, may make it inequitable to require further payment of alimony. The marriage in the case at bar was nine years and Husband had been paying APL since March 9, 2011. Wife also has steady employment with reasonable earnings, and the additional ability to add income through summer employment. She has past experience in the dental field that she can pursue with some more education. The determination not to award alimony was proper.

In view of all the foregoing, the court's determination does meet the standards for achieving economic justice for the parties. It should be affirmed.

BY THE COURT:

DATED: October 26, 2016

_____
Charles H. Saylor, President Judge

pc: Melodie Protasio, Esquire, 36 West Fourth Street, Williamsport, PA 17701
    Martin R. Wilson, Esquire, 222 Market Street, Lewisburg, PA 17837
    Court