J-A11015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEREMY J. MILLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIA A. MILLER | : | No. 318 MDA 2018 |

Appeal from the Decree Entered February 1, 2018
In the Court of Common Pleas of Adams County Civil Division at No(s):
14-S-725

| | | |
|---|---|---|
| JEREMY J. MILLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIA A. MILLER | : | |
| | : | |
| Appellant | : | No. 374 MDA 2018 |

Appeal from the Decree Entered February 1, 2018
In the Court of Common Pleas of Adams County Civil Division at No(s):
14-S-725

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 30, 2019**

Jeremy J. Miller ("Husband") and Julia A. Miller ("Wife") each appeal[1]

from the February 1, 2018 divorce decree, challenging various aspects of the

trial court's equitable distribution of the parties' respective marital property.

---

[1]  On April 6, 2018, this Court consolidated Husband's and Wife's respective
appeals, *sua sponte*, pursuant to Pa.R.A.P. 2136.

We reverse in part, affirm in part, and remand for further proceedings consistent with this memorandum.

Husband and Wife were married on November 17, 2007, in Carroll Valley, Adams County, Pennsylvania. The parties have one minor child together, M.M., of whom Husband and Wife share equal physical custody pursuant to a separate court order that is not at issue in this appeal. For approximately the last twenty-five years, Husband has been employed full-time at Miller Fabrication, Inc. ("Miller Fabrication"), with duties including welding, fabrication, and management. Miller Fabrication was wholly owned by Husband's parents, Keith Miller and Linda Miller. Its successor, Miller Steel Fabrication, LLC ("Miller Steel"), is solely owned by Keith Miller and continues to employ Husband.[2]

During the course of the marriage, Wife worked as a licensed cosmetologist at a number of different hair salons until the birth of M.M. in September 2011, after which she largely served as a stay-at-home parent. At roughly the same juncture, Wife also took on corporate responsibilities for Miller Fabrication. As of April 6, 2011, Wife took over as the sole board

_____

[2] Miller Fabrication, Inc. was created as a business-stock corporation under Pennsylvania law on March 25, 1991, when Linda Miller filed articles of incorporation listing her as the sole incorporator. Linda Miller was also listed as the sole member of the board of directors, and simultaneously served as the president, vice-president, secretary, and treasurer of the corporation. Linda Miller was also the sole stockholder in Miller Fabrication, which will have determinative implications later in this memorandum. In August 2015, Keith Miller created Miller Steel Fabrication, LLC, of which he is the sole member. Its operations are co-extensive with, and have replaced, Miller Fabrication.

member of Miller Fabrication, and was also named the president, secretary, and treasurer of the corporation as a result of Linda Miller's failing health due to cancer. Linda Miller passed away in July 2011, and bequeathed all of her earthly possessions to Keith Miller via a 1983 will that was not probated until August 2016.

Also during the marriage, on July 12, 2010, Wife and members of her immediate family purchased a farm located on Rabbit Run Road South in Greencastle, Franklin County, Pennsylvania ("Rabbit Run Road") for $219,000. Although Wife did not provide any of the initial down payment funds, she was listed as a full grantee on the deed to Rabbit Run Road. In relevant part, it appears that Wife was gratuitously given a one-quarter joint ownership interest in Rabbit Run Road, along with her family members that included her grandmother, Betty Myers. *See* N.T. Hearing, 11/22/16, at 615-36. On February 16, 2016, Rabbit Run Road was sold for approximately $450,000, which resulted in a net profit of $249,280.46. Based on an informal agreement among the grantee-relatives, Wife received none of the resulting funds from the sale, which were divided amongst the other members of Wife's family. *See* Agreement to Split Proceeds, 2/16/16, at 1.

Ultimately, Husband and Wife separated on December 6, 2013. Husband filed a divorce complaint on June 6, 2014, which included claims for divorce and equitable distribution. The divorce master ("Master") held hearings on October 24, 2016, and November 21-22, 2016. In a Report and Recommendation filed August 18, 2017, the Master made determinations

regarding the status of the following property that is relevant to this appeal: (1) Miller Fabrication and its associated bank accounts, which were determined to be marital assets due to alleged "judicial admissions" from Husband; (2) Rabbit Run Road; (3) $86,000 in U.S. currency located in a safe; (4) Husband's racing stock car; and (5) an M&T Bank account associated with Husband's racing corporation, Jeremy Miller Racing, Inc. ("JMR"),[3] which was determined to be a martial asset. All of the aforementioned property was deemed to represent marital assets,[4] except for Rabbit Run Road, which was determined to be a non-marital gift to Wife. **See** Master's Report and Recommendation, 8/18/17, at 23-24.

_____

[3] Jeremy Miller Racing, Inc., is a Pennsylvania corporation that is apparently owned by a third party named Stewart Byers, who was also allegedly the owner of record for both the at-issue stock car and JMR bank account. There is no documentation to this effect in the certified record. However, there are also indications in the record that the stock car was only utilized by Husband, who also had exclusive control over the JMR bank account. Miller Fabrication also made significant monetary contributions to JMR's operations. The stock car was ultimately sold after the parties separated. **See** N.T. Master's Hearing, 11/21/16, at 317-18.

[4] Both the Master and the trial court ultimately concluded that Husband's stock racing car was a marital asset with a value of $38,000, or the price for which it was ultimately sold. Concomitantly, they concluded that Husband's racing endeavors had been substantially supported by Keith Miller and Miller Fabrication. Accordingly, the marital value of the car was reduced to $19,000. **See** Master's Report and Recommendation, 8/18/17, at 22 ("[T]he [M]aster also found considerable evidence that Husband's ownership of the race car was at least partly due to support from his father in the form of gifts."). The outstanding $19,000 was characterized as a "gift" from Husband's father. **See** Trial Court Opinion, 12/29/17, at 22.

On September 11, 2018, Husband filed with the trial court exceptions to the Master's Report and Recommendation, including claims that the Master erred by: (1) concluding that Miller Fabrication was a marital asset based upon the 2011 transfer of corporate authority from Linda Miller to Wife; (2) determining that Rabbit Run Road constituted a "gift" to Wife and, therefore, is a non-marital asset; (3) finding that Husband's stock car was a marital asset; (4) determining that the JMR bank account was marital property; and (5) concluding that the $86,000 in cash is a marital asset. *See* Husband's Exceptions, 12/11/18, at ¶¶ 3-9, 11-17, 22, 24. The parties extensively briefed these issues, with Wife essentially opposing Husband's exceptions and concurring in the Master's Report and Recommendation.

On December 29, 2017, the trial court issued an order and opinion regarding Husband's exceptions. In pertinent part, the trial court held that: (1) because ownership of Miller Fabrication was never actually transferred to Wife, the corporation remained the property of Keith Miller as a result of Linda Miller's will, and the corporation's assets were improperly identified as marital property by the Master; (2) Wife's interest in Rabbit Run Road was not a gift as stated by the Master, but a mere "expectancy inheritance interest" that ultimately had no marital value after Wife elected to forego her share; (3) the Master properly included the $86,000 from the safe as a marital asset; and (4) the increase in value of the stock car and JMR bank account were also properly categorized as marital property. *See* Trial Court Opinion, 12/29/17,

at 7-17, 21-22. Thus, the trial court granted in part and denied in part Husband's exceptions to the Master's Report and Recommendations.

A final divorce decree was entered on February 1, 2018. Husband filed a timely notice of appeal,[5] and Wife filed a timely cross-appeal. The parties were respectively ordered to file concise statements of errors pursuant to Pa.R.A.P. 1925(b), and both Husband and Wife timely complied. The trial court filed an opinion pursuant to Rule 1925(a) referencing the discussion contained in its December 29, 2017 order and opinion.

We begin by addressing Husband's before turning to Wife's claims. Husband has raised the following issues for our disposition:

1. Whether the trial court committed an abuse of discretion and erred as a matter of law, by determining that the property known as Rabbit Run Road was not a marital asset and not subject to equitable distribution.

2. Whether the trial court committed an abuse of discretion and erred as a matter of law, in concluding that the $86,000 in cash, located in a safe, was a marital asset and subject to equitable distribution.

3. Whether the trial court committed an abuse of discretion and erred as a matter of law, by concluding that the [JMR bank account] was a marital asset and subject to equitable distribution.

_____

[5] Husband's notice of appeal incorrectly references the December 29, 2017 order of the trial court, which would render his appeal untimely under the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 903(a)(1). However, Husband's appeal actually lies from the divorce decree that was entered by the trial court on February 1, 2018. *See Campbell v. Campbell*, 516 A.2d 363, 366 (Pa.Super. 1986) ("[A] pre-divorce decree distributing marital property is interlocutory. It cannot be reviewed until it has been rendered final by the entry of a decree in divorce."). Thus, it is timely.

4. Whether the trial court committed an abuse of discretion and erred as a matter of law, in concluding that the stock/race car was a marital asset and subject to equitable distribution.

Husband's brief at 4 (excessive capitalization omitted; renumbered).

Our standard and scope of review of the trial court's equitable distribution of marital property is well-established under existing precedent:

> A trial court has broad discretion when fashioning an award of equitable distribution. *Dalrymple v. Kilishek*, 920 A.2d 1275, 1280 (Pa.Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Smith v. Smith*, 904 A.2d 15, 19 (Pa.Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. *Id*. This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Wang v. Feng*, 888 A.2d 882, 887 (Pa.Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. *Id*. "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa.Super. 2005) (citation omitted).

*Balicki v. Balicki*, 4 A.3d 654, 662-63 (Pa.Super. 2010).

The statutory definition of "marital property" has been drawn broadly to encompass "all property acquired by either party during the marriage and the increase in value of any nonmarital property." 23 Pa.C.S. § 3501(a). However, Pennsylvania statute explicitly excludes "[p]roperty acquired by gift, . . . bequest, devise or descent" from this definition. *Id*. at 3501(a)(3). As a

general matter, "[a] valid *inter vivos* gift requires donative intent, delivery, and acceptance." ***In re Estate of Moskowitz***, 115 A.3d 372, 386 (Pa.Super. 2015). With specific reference to the case at bar, an *inter vivos* gift of joint ownership interest in real property must "invest in the donee so much dominion or control of the subject matter of the gift as is consonant with a joint interest or ownership therein" in order to be deemed valid. ***In re Parkhurst's Estate***, 167 A.2d 476, 478 (Pa. 1961).

In Husband's first issue, he challenges the trial court's conclusion that Rabbit Run Road was a non-marital asset without value. In relevant part, the trial court's treatment of this issue disapproved of the Master's conclusion that Wife's receipt of a one-quarter ownership interest in Rabbit Run Road was a gift, characterizing it instead as a mere "expectancy inheritance interest." Trial Court Opinion, 12/29/17, at 17. Specifically, the trial court's analysis concluded that there was insufficient "donative intent." ***Id***. at 14-17.

The trial court's conclusions lean heavily upon Betty Myers' testimony that she had not intended Wife's ownership interest to be a "gift." ***See*** N.T. Hearing, 11/22/16, at 615 ("I put her name on the turkey farm but that was not a gift; that was for future benefits."). Instead, Betty Myers characterized Wife's ownership interest as a future hedge against the inheritance tax. ***Id***. ("I and my husband had talked about this, put [Wife's] name on to protect it from later on that she would not have to pay inheritance tax."). Based upon this testimony, the trial court concluded that Wife's ownership interest was

not a "gift" as a result of the above-recited lack of donative intent, and that Wife's "expectancy inheritance interest" was extinguished with the sale of Rabbit Run Road without ever being realized. *See* Trial Court Opinion, 12/29/17, at 15-17. Finally, the trial concluded that even if Wife's ownership interest was considered a "gift," the fact that she personally realized no financial gain from her ownership interest would "have no value" for the purposes of equitable distribution. *Id*. at 17. These conclusions are plainly erroneous under existing Pennsylvania law.

The deed related to the 2010 purchase of Rabbit Run Road by Wife and her family is not in the certified record, nor was it available to the Master or trial court. *See* N.T. Hearing, 11/22/16, at 623. However, the certified record elsewhere indicates that Wife was included as a full grantee-owner on the deed, and there do not appear to have been any relevant limitations on her one-quarter ownership interest. *See* Master's Report and Recommendation, 8/18/17, at 9-10; *see also* Trial Court Opinion, 12/29/17, at 14-15. Wife was also listed as an owner on all of the relevant mortgage and sale documents related to Rabbit Run Road, including the note related to the mortgage on the property.

Although Betty Myers testified that Wife's ownership interest was intended as a method of circumventing inheritance tax, there appears to have been no attempt to legally effectuate this intent so as to diminish Wife's overall ownership interest. *See* N.T. Hearing, 11/22/16, at 615-36. The only direct

action by Wife's family to limit Wife's stake in Rabbit Run Road that appears in the certified record is an "Agreement to Split Proceeds" that was contemporaneously executed with the sale of Rabbit Run Road. *See* Agreement to Split Proceeds, 2/16/16, at 1. Rather, Betty Myers' testimony bespeaks an informal understanding amongst Wife's family that Wife would only derive income from Rabbit Run Road in the event that Betty Myers died still owning the property.[6] *Id*. Contrary to the trial court's suppositions about an expectancy inheritance interest, Wife's partial ownership appears to have fully vested from the outset of her inclusion on the deed to Rabbit Run Road.

Even assuming, *arguendo*, that Wife's ownership interest in Rabbit Run Road was given to her purely for the purposes of avoiding inheritance tax, that is sufficient on its own to establish donative intent in this context: "A transfer motivated by an attempt to avoid inheritance taxes is 'not inconsistent with a donative intent, but rather positively suggests such an intent.'" *Sutliff v. Sutliff*, 543 A.2d 534, 539 n.1 (Pa. 1988) (quoting *Clay v. Keiser*, 334 A.2d 263, 266 n.3 (Pa. 1975), **abrogated on separate grounds**, *Butler v. Butler*, 347 A.2d 477, 480 (Pa. 1975)). Thus, to the extent that the trial court suggests that Wife's ownership interest in Rabbit

---

[6] *But cf.* 21 P.S. § 2 ("[I]n any deed or instrument in writing for conveying or releasing land hereafter executed, unless expressly limited to a lesser estate, the words 'grant or convey,' . . . shall be effective to pass to the . . . grantees named therein a fee simple title to the premises conveyed . . . .").

Run Road was not a gift due to an alleged lack of donative intent, that holding is in conflict with existing Pennsylvania law.[7]

Overall, the certified record indicates that Wife's joint ownership interest in Rabbit Run Road was delivered to her without consideration or relevant legal reservation, and that Wife accepted. **Accord Parkhurst's Estate**, **supra** at 478. Moreover, there are clear indications of the donative intent of Betty Myers. **Accord Sutliff**, **supra** at 539 n.1. That is the very definition of a gift. **See Semasek v. Semasek**, 502 A.2d 109, 111 (Pa. 1985) ("The term 'gift' has a definite meaning. Our law requires only donative intent, delivery and acceptance."). Accordingly, the trial court erred in concluding that Wife's ownership interest in Rabbit Run Road was not a gift.

Based on the above determination the Wife's ownership interest in Rabbit Run Road was a "gift" under § 3501(a)(3), the trial court also committed error with respect to its determination that Wife's ownership interest in Rabbit Run Road had no value whatsoever for the purposes of

---

[7] The trial court devotes the lion's share of its discussion of this issue to a lengthy discussion of inapposite case law concerning the equitable distribution of financial instruments related to inheritances. **See Solomon v. Solomon**, 611 A.2d 686, 689-91 (Pa. 1992) (holding that one-half of wife's irrevocable trust was non-marital to the extent that her interest was not yet vested); **see also Gruver v. Gruver**, 539 A.2d 395, (Pa.Super. 1988) (holding that husband's potential inheritance from his parents could not be considered during equitable distribution). Instantly, no such considerations are present. The trial court's reasoning focuses solely on Wife's future avoidance of inheritance taxes as the only asset at issue with respect to Rabbit Run Road. It ignored the fact that Wife enjoyed an unfettered joint ownership interest in that property.

equitable distribution in this case. *See* Trial Court Opinion, 12/29/17, at 17. Although the gift of Wife's initial ownership interest in that property is non-marital, the increase in value of Rabbit Run Road during the course of the parties' marriage **is** marital property pursuant to 23 Pa.C.S. § 3501(a) (providing that the definition of "marital property" includes "the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1)."). This Court has held that increases in the value of a gift during the course of the marriage is marital property and, therefore, subject to equitable distribution. *See Kohl v. Kohl*, 564 A.2d 222, 227 (Pa.Super. 1989).

Instantly, the value of Rabbit Run Road appears to have more than doubled from the time of its initial purchase by Wife and her family on July 12, 2010 ($219,000) to the time of its sale on February 16, 2016 ($450,000), with a resulting profit of $249,280.46 in cash. Only the increase in value of Rabbit Run Road from July 12, 2010 until the parties' "final date of separation" would be considered martial property in these circumstances. *See* 23 Pa.C.S. § 3501(a.1) ("The increase in value of any nonmarital property . . . shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase."). As a consequence of Wife's one-quarter joint ownership of Rabbit Run Road, one-quarter of the overall increase in value of the property is

marital property for the purposes of equitable distribution. *Id*. Hence, the trial court erred by concluding that Wife's joint ownership interest in Rabbit Run Road had "no" value whatsoever. Overall, Wife's decision to forfeit her portion of the proceeds resulting from the post-separation sale of Rabbit Run Road does not negate the underlying value of the marital property that she transferred to her family. Upon remand, the trial court shall recalculate equitable distribution in light of this additional marital asset regardless of Wife's decision to forfeit it.

Turning to Husband's second issue, he avers that the trial court erred in concluding that the $86,000 located in Husband's safe was a marital asset. Wife testified that this money was essentially given to both her and Husband by Keith Miller, *see* N.T. Hearing, 11/22/16, at 555-56, and both the trial court and the Master concluded that Husband had actual possession of the at-issue cash. *See* Master's Report and Recommendation, 8/18/17, at 8; *see also* Trial Court Opinion, 12/29/17, at 21. Husband consistently testified that he regularly kept personal cash in the marital home. *See* N.T. Hearing, 11/21/16, at 248-49. However, both Husband and Keith Miller averred that this particular hoard of cash still belonged to Keith Miller and that he was merely storing the cash in Husband's safe temporarily. *Id*. at 250-51, 324-25, 339, 372. Ultimately, the trial court found Wife's averments more credible, and credited her version of events. *See* Trial Court Opinion,

12/29/17, at 21 ("The Master found Wife to be more credible than Husband and the Master believed that the cash was owned by Husband and Wife.").

Husband's discussion of this issue is cursory, and does not cite any governing authority under Pennsylvania law. In sum, Husband essentially argues that we should credit Keith Miller's version of events above that of Wife by substituting our judgment for that of the trial court. The record supports the trial court's factual conclusions, and we will not upset its credibility determinations. *See Murphy v. Murphy*, 599 A.2d 647, 653 (Pa.Super. 1991) ("The factfinder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below."); *see also Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa.Super. 2011) ("[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties."). No relief is due on this claim.

With respect to Husband's third and fourth appellate issues, he challenges the trial court's conclusion that both the JMR stock car and bank account are marital property. Husband's argument on both claims is identical, in that he alleges the trial court improperly relied upon credibility determinations in concluding both assets were marital property. *See* Husband's brief at 20-25. Thus, we will address these claims collectively.

Although Husband asserts that the trial court improperly relied upon credibility determinations in concluding that the JMR stock car and bank account were marital property under § 3501(a), he advanced no demonstrative evidence to that effect beyond his own testimony and that of his father.[8] In relevant part, both men claimed that JMR was exclusively sponsored by Miller Fabrication and owned either by Miller Fabrication, Keith Miller, or a third party named Stewart Byers. *See* N.T. Hearing, 10/24/16, at 63-68, 98-104; *see also* N.T. Hearing, 11/21/16, at 268, 317-21. However, this testimony was directly contradicted by Wife, who testified that: (1) Husband exercised exclusive control over the JMR bank account; and (2) the stock car was "bought"[9] for Husband's exclusive use and benefit. *See* N.T. Hearing, 11/21/16, at 401-03. Both the Master and the trial court obviously chose to credit Wife's version of events in light of their respective determinations that this property was marital. *See* Trial Court Opinion, 12/29/17, at 22 ("The intent of the parties appear that the race car was

---

[8] The only documentary evidence related to the stock car that appears in the certified record is a receipt dated March 12, 2014, that purports to document the sale of the stock car by Keith Miller for $38,000. This document speaks neither to the ultimate ownership of the vehicle during the course of the parties' marriage, nor to the intent of the parties.

[9] According to Wife, Husband was given the stock car by an individual named Mark Richards free of charge. She testified that Husband would only be required to pay Richards when (or if) Husband sold the stock car. *See* N.T. Hearing, 11/21/16, at 402. There is no indication in the certified record that this payment was ever made.

- 15 -

bought for Husband's exclusive use. . . The Master further found that [Husband] was in sole control of the [JMR] bank account.").

Husband's argument suggests that some evidence other than this testimony should govern in this context. But in asking us to override the trial court's credibility conclusions, Husband has offered nothing but a threadbare argument that his version of events should be credited above that of Wife. As such, Husband essentially asks us to substitute our weighing of these witnesses' respective credibility for that of the trial court, which is clearly improper under the precedent discussed immediately above. *See Murphy*, *supra* at 653; *see also Childress*, *supra* at 455-56. Our review of the certified record indicates that the trial court's conclusions are supported by the record. Accordingly, no relief is due as to Husband's third and fourth appellate issues.

We now turn to Wife's appellate claims, which are as follows:

1. Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law, by determining that Miller Fabrication, Inc. was not a marital asset and was not subject to equitable distribution.

2. Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law by determining that "[n]o evidence was presented that the corporation bylaws were revised at any time."[10]

---

[10] Wife withdrew this issue in her brief. *See* Wife's brief at 50 ("Wife waives her right to argue this singular Matter Complained of on Appeal and this single matter raised on appeal is withdrawn."). As such, this claim is waived and we will not address it in this memorandum.

3.    Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law by determining that the bank account utilized by Miller Fabrication, Inc. was not a marital asset subject to equitable distribution.

4.    Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law by determining that the bank account utilized by Miller Fabrication, Inc. was transferred from [Linda Miller] by operation of [Linda Miller's] Last Will and Testament to [Keith Miller] in 2016, five years after her death, when the bank account was transferred by [Linda Miller] to [Wife] in 2011 prior to [Linda Miller's] death.

5.    Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law by determining that the bank account utilized by Miller Fabrication, Inc. was [not a] marital asset, resulting in [Husband] being unjustly enriched when the overwhelming uncontroverted evidence demonstrate that the parties exercised control and utilized this account as a personal asset from 2011 through the parties' separation in 2014 and [Husband] continued to exercise control and utilize this account as a personal asset after the parties' separation and therefore, dissipated this asset until such time as [Wife] transferred the funds to preserve the remaining balance in the account for equitable distribution.

6.    Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law by rejecting the Divorce Master's reliance upon judicial admissions as one of the many reasons for concluding that Miller Fabrication, Inc. was a marital asset.

7.    Whether the Trial Court committed an abuse of discretion and/or erred as a matter of law by relying on *Oak v. Cooper*, 638 A.2d 208 (Pa. 1994), as the basis for the legal conclusion that Miller Fabrication, Inc. was not a marital asset.

Wife's brief at 7-9 (cleaned up).  Although styled as separate, these claims all

challenge the trial court's conclusion that Miller Fabrication, its bank accounts,

and two vehicles associated with the corporation were not martial assets.

To the extent that Wife seeks reinstatement of the Master's original conclusion that ownership of Miller Fabrication was established via judicial admissions, the trial court properly rejected that argument under existing precedent. **See In re Paxson Trust I**, 893 A.2d 99, 113 n.10 (Pa.Super. 2006) ("While admissions contained in pleadings, stipulations, and the like, are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who made them, conclusions of law contained in pleadings are not treated as admissions of facts in issue."). Wife counters by citing our holding in **Nasim v. Shamrock Welding Supply Co.**, 563 A.2d 1266, 1267-68 (Pa.Super 1989), which the Master also relied upon in reaching its original conclusion. However, **Nasim** dealt exclusively with admissions of fact. **Id**. at 1268. Instantly, the ownership of Miller Fabrication presents a question of law implicating the interpretation of both Pennsylvania statutes and corporate bylaws. **See Sagamore Estates Property Owners Ass'n v. Sklar**, 81 A.3d 981, 984 (Pa.Super. 2013). As such, any statements regarding the ultimate ownership of Miller Fabrication constitute mere conclusions of law that are not subject to factual admission. **See Nasim**, **supra** at 1267-68. We will not upset the trial court's holding on these threshold grounds.

The trial court engaged in a thorough analysis and discussion of the ownership of Miller Fabrication and its related assets, which focused upon which individual ultimately owned the stock shares in the corporation as a

result of the relevant corporate bylaws.[11]  As a general matter, the bylaws provide for the issuance and transfer of stocks by Miller Fabrication.  **See** Bylaws of Miller Fabrication, 3/19/91, at Art. VI, §§ 6.01-.03.  Also in reference to this controversy, Section 6.04 of the Miller Fabrication bylaws provides as follows regarding ownership of the corporation:

> Section 6.04.  RECORD HOLDER OF SHARES.  The corporation shall be entitled to treat the person in whose name any share or shares of the corporation stand on the books of the corporation as the absolute owner thereof, and shall not be bound to recognize any equitable or other claim to, or interest in, such share or shares on the part of any other person.

**Id**. at Art. VI, § 6.04.  Thus, these bylaws provide that ownership of Miller Fabrication is predicated upon stock ownership.  **Id**.

After reviewing the relevant corporate documentation, the trial court concluded that the only issuance of stock by Miller Fabrication took place on March 19, 1991, when Linda Miller issued 50 shares to herself.  **See** Unanimous Consent in Lieu of First Meeting of Board of Directors, 3/19/91, at unnumbered 3.  It is undisputed that Wife was eventually named as the sole corporate officer and director of Miller Fabrication.  **See** Minutes of a Special

---

[11]  Instantly, it appears to us that these bylaws are applicable in this context as Wife was an officer of Miller Fabrication at the time of separation: "[T]he bylaws of a business corporation shall operate only as regulations among the shareholders, directors and officers of the corporation and shall not affect contracts or other dealings with other persons unless those persons have actual knowledge of the bylaws."  15 Pa.C.S. § 1505.  Moreover, it also seems clear that Wife possessed actual knowledge of the corporate bylaws as the sole corporate officer and director of Miller Fabrication for five years.

Meeting of the Board of Directors Miller Fabrication, Inc., 4/6/11, at unnumbered 1. However, Linda Miller's shares in Miller Fabrication were never transferred to Wife's possession prior to Linda Miller's death. With respect to the transfer of stock from one individual to another, the bylaws explicitly require that such "[t]ransfers of shares shall be made on the share register or transfer books of the corporation upon surrender of the certificate therefor, endorsed by the person named in the certificate or by an attorney lawfully constituted in writing." Bylaws of Miller Fabrication, 3/19/91, at Art. VI, § 6.03. These forms were simply not observed, and the transfer of stock never took place.

Instead, the trial court concluded that these shares passed to Keith Miller via Wife's will. *See* Linda Miller's Last Will and Testament, 8/30/83, at unnumbered 1 ("I give, devise, and bequeath all the rest and residue of my estate, of whatever kind and description, wherever situate, to my husband, . . ., absolutely and in fee simple."). For our purposes, we note that such shares are considered personal property under Pennsylvania law. *See* 15 Pa.C.S. § 1521(d). Pennsylvania precedent also confirms the general proposition that such shares may be transferred via estate. ***See Estate of McKenna***, 489 A.2d 862, 866 (Pa.Super. 1985) ("[T]he reference to all personal property would refer to all the personalty in which the decedent had an interest at the time of [her] death, whether it is tangible or intangible. Personal property in the ordinary sense includes stocks, bonds and cash."). Thus, Linda Miller's

transfer of this stock via her estate is valid under Pennsylvania law.[12] We discern no abuse of discretion or legal error in the trial court's analysis of corporate ownership, and we reject Wife's arguments challenging this determination.

However, Wife is not just challenging equitable distribution of the company, but also of its related assets: namely, two vehicles and a corporate bank account. Under Pennsylvania law, ownership of corporate stock and ownership of corporate assets are separate areas of inquiry. **See Bidwell v. Pittsburgh, O. & E. L. Pass. Ry. Co.**, 6 A. 729, 733 (Pa. 1886) ("The shares in a corporation constitute a species of property entirely distinct from the corporate property. A shareholder has no distinct and individual title to the moneys or property of the corporation, nor any actual control over it.").

In relevant part, Wife argues that bank accounts and vehicles associated with Miller Fabrication were transferred into her name and used by both herself and Husband. Consequently, she argues these items should be considered marital property. As an initial matter, we note that there is no dispute that these two vehicles were used exclusively for business purposes. **See** Master's

_____

[12] We note that there are no indications in the certified record that the transfer requirements under Miller Fabrication's bylaws have been fulfilled with respect to the transfer of Linda Miller's shares to Keith Miller. **See** Bylaws of Miller Fabrication, 3/19/91, at Art. VI, § 6.03. Assuming, *arguendo*, that ownership of the shares continues to reside in Linda Miller's estate, Wife has presented no competent evidence aside from her own testimony suggesting ownership of Miller Fabrication was transferred to her consistent with the bylaws.

Report and Recommendation, 8/18/17, at 8 ("[T]here is no question both were used exclusively for the business."). It also appears from the certified record that these claimed transfers[13] were all directly related to Wife taking over Linda Miller's status as a corporate officer and director of Miller Fabrication. *See* N.T. Hearing, 11/21/16, at 464-67; *see also* N.T. Hearing, 11/22/16, at 499-505, 564-66. As has recently been observed by our brethren on the Commonwealth Court, "officers of a corporation are not deemed to be the owners of corporate property even to the extent that they are shareholders of the corporation." *Bradley v. Zoning Hearing Bd. Of Borough of New Milford*, 63 A.3d 488, 492 (Pa.Cmwlth. 2013).[14] As such, we discern no legal error or abuse of discretion of the trial court's conclusion that both Miller Fabrication and its related assets were not "marital property."

At bedrock, Wife's disagreement with the trial court's holding also implicates tension between this Court's holding in *Fitzpatrick v. Fitzpatrick*, 547 A.2d 362, 367 (Pa.Super. 1988) ("[B]are title may not be used as a shield

---

[13] Although Wife intimates that she was added to the at-issue bank account and vehicle titles, there is no documentation confirming these alleged "transfers" in the certified record. The conflicting testimony of the parties stands alone. The Master's report also fails to indicate whether Wife was the sole individual listed on these accounts and titles. With respect to at least one of the vehicles, it appears that Wife shared title with Keith Miller. *See* Master's Report and Recommendation, 8/18/17, at 7-8.

[14] Although Commonwealth Court case are not binding upon this Court, "such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1088 n.1 (Pa.Super. 2010).

to protect for the benefit of one party that which in reality belongs to the marriage.") and our Supreme Court's holding in **Oaks v. Cooper**, 638 A.2d 208 (Pa. 1994). In **Oaks**, the High Court adjudicated a dispute regarding whether a corporate entity was marital property. Specifically, the corporation was a holding company for farm realty that was transferred to a third party family member by a transfer of stock. The appellant-husband had "treated the farm as his own for tax purposes," intermingled "farm income and expenses with his own," taken out loans relating to the farm, and served as the "incorporator, president of the corporation and a director," but "at no time had ostensible ownership" of the corporation. **Id**. at 210-11. On the basis of these facts, the Superior Court found that husband had a "beneficial" interest in the corporation pursuant to **Fitzpatrick**. However, our Supreme Court ultimately "rejected the notion that any aspect of the corporation should be considered a marital asset." **Id**. at 211. In pertinent part, the Supreme Court focused on the lack of appellant-husband's direct ownership interest:

> Although the farm property may well have been incorporated to shield it from [wife], what was being shielded was problematic in the extreme. [Husband] was not only not the titular owner of the land, but prior to his parents' transfer of their stock to [husband's sister], had merely an expectancy of its ownership, a circumstance not affecting equitable distribution. **See Gruver**, **supra** at 397. That expectancy was obliterated by the transfer to his sister. Moreover, although [husband] may have treated the farm as his own for agricultural purposes, he paid rent for the use of the land, the corporation's books were separate, and the equipment depreciation was taken by [husband] because the machines belonged to him—the shares representing ownership only of the realty. Thus, the facts, *e.g.*, loans and income, relied upon by the Superior Court in finding a beneficial interest, related not to the

- 23 -

corporation, but only to the farming operation and its
accouterments, a separate entity, and one which was not subject
to equitable distribution.

*Id*. at 211 (internal citation shortened for consistency).

*Oaks* is substantially analogous to the present controversy. Although
there is competent evidence of record indicating that Miller Fabrication's funds
were utilized for the personal expenses of Husband and Wife, neither party
possessed a direct ownership interest in the corporation. Furthermore, our
Supreme Court directly tempered the holding in *Fitzgerald* now relied upon
by Wife[15] by overruling this Court's initial conclusion in *Oaks* that a
"beneficial" interest had attached to the entity by way of one spouse's
significant financial involvement in the corporation. Instantly, Husband and
Wife are (or were) a corporate employee and an officer and director,
respectively. However, that is an insufficient basis to transform the entire
corporation and its holdings into martial assets under these circumstances.

---

[15] Wife also cites *Liciardello v. Liciardello*, 570 A.2d 1062 (Pa.Super. 1990)
and *Maier v. Maier*, 418 A.2d 558 (Pa.Super. 1980) in support of her claims.
These cases are inapposite to the present circumstances. In *Liciardello*,
*supra* at 1063-64, this Court concluded that a transfer of real estate by a
husband to his son was not a "gift" but an attempt to avoid equitable
distribution. Instantly, the conveyance of ownership of Miller Fabrication from
Linda Miller to Keith Miller occurred pursuant to a document that predated the
parties' marriage and divorce by more than thirty years. As such, there is no
salient allegation that this transfer was manufactured solely to avoid equitable
distribution. This Court's holding in *Maier*, *supra* at 585, is equally
inapplicable, as it does not address marital property categorization, but
earning capacity determinations. The opinions in both *Liciardello* and *Maier*
also predate our Supreme Court's pronouncement in *Oaks* by several years.

*Accord Oaks*, *supra* at 211. Wife has failed to demonstrate that the trial court's conclusions were borne of either an abuse of discretion or a legal error. As such, her claims regarding Miller Fabrication are without merit.

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2019